## HOWARD *et al.* *vs.* SNELLING.

1. The sole subscribing witness to a deed, or other instrument of writing, being dead, proof that the subscription of his name is his genuine handwriting and signature, is sufficient to admit the paper in evidence.
2. A recital in a bill of sale, or other muniment of title, of a pecuniary consideration, paid by the vendee to the vendor, for the property sold, is not evidence against a party claiming under the vendor by a prior conveyance of the same property.
3. In a case arising between a volunteer and a subsequent purchaser for value, without notice, it is not error in the Court to charge the jury that the subsequent sale of the property was a circumstance to be considered by them in determining whether or not the voluntary deed was made with intent to defraud.
4. Nor was it error in the Court, to charge, that that circumstance is not conclusive, but that it may be rebutted by evidence showing that the voluntary conveyance was *bona fide*.

The cases of Flemming *vs.* Townsend, Fowler *vs.* Waldrip, Harper *vs.* Scott, Clayton *vs.* Brown, Brown *et al.* *vs.* Burke, and Black *et al.* *vs.* Thornton, reviewed, shown to be consistent and re-affirmed.

5. 6. 7. A great lapse of time, (say thirty years), between the voluntary conveyance and the subsequent conveyance for value, is a circumstance to be gravely considered as evidence rebutting the presumption of fraud, growing out of the case; and connected with other evidence, showing strong influences operating on the donor's sense of justice and natural affection, to induce the making of the voluntary conveyance, should be considered a rebuttal of the presumption.

Trover, in Stewart Superior Court. Tried before Judge PERKINS, at the October Term, 1860.

This was an action brought by Harman H. Howard and his wife, Mary Howard, Elizabeth Speer, Harman H. Howard, as administrator of Wm. B. Tompkins, deceased, and John Smith, as administrator of John Tompkins and Stephen Tompkins, deceased, against John D. Snelling and James W. Snelling, to recover damages for the alleged conversion, by the defendants, of ten negro slaves, to which the plaintiffs claim title, to-wit: Harriet, and her children, George, Jacob, Daniel, Morgan, Rhoda, Clarissa, Sophia, Maria and Jackson, alleged to be worth, in the aggregate, the sum of ten thousand dollars, and of the aggregate yearly value for hire, of eight hundred and seventy-five dollars.

Pending the action, John Smith, one of the plaintiffs, died, and Obediah R. Lewis, administrator, *de bonis non*, of John Tompkins and Stephen Tompkins, deceased, was made party plaintiff in his stead. The name of James W. Snelling was stricken from the case as a defendant.

In behalf of the plaintiffs, the following facts were proved on the trial, to-wit:

Samuel Tompkins married a woman in the county of Jefferson, whose name is not given in the record, and found, on said marriage, that she was pregnant, and he immediately carried her back to Jefferson county, from whence he had brought her; afterwards, he married another woman, by the name of Polly Watts. On the ninth day of August, in the year 1809, he executed a deed, of which the following is a copy, to-wit:

" This indenture, made this ninth day of August, in the year of our Lord one thousand eight hundred and nine, between Samuel Tompkins, of the county of Washington, and State of Georgia, of the one part, and Robert Rutherford, of the town of Milledgeville, and Baldwin county, and Franklin Rutherford, of Washington county, both of said State of Georgia, of the other part, witnesseth : That for and in consideration of the trust and confidence reposed in the said Robert Rutherford and Franklin Rutherford, as well as the love, good will and affection which he hath for and towards the children of Polly Watts, otherwise Polly Tompkins, hath given and granted, and doth, by these presents, freely give and grant unto the said Robert Rutherford and Franklin Rutherford, the following negroes, to-wit: Jack, February, Rhody, Stephen and Sarah ; to have and to hold the aforesaid five negroes unto the said Robert Rutherford and Franklin Rutherford, upon trust, nevertheless that the said Robert Rutherford and Franklin Rutherford, or either of them, shall, and do well and truly, and without partiality, divide, and equally apportion the before mentioned negroes, together with their increase, at the death of the said Samuel Tompkins, or within nine months thereafter, among all the children that may be born of the said Polly Watts, otherwise Polly Tompkins, at the end of said nine months, whether legitimate or illegitimate ; and the said Samuel Tompkins, for the full and more clear disposal of the said five negroes, as well as their increase, doth covenant to and with the said Robert Rutherford and Franklin Rutherford, to and for the use of the said children of the said Polly Watts, otherwise Polly Tompkins, of which children are now in life, John, Betsy, Samuel and Polly, sons and daughters of the said Polly Watts, otherwise Polly Tompkins, shall have, hold, occupy and enjoy : Provided, nevertheless, the said Samuel Tompkins, also, the said Polly Watts, otherwise Polly Tompkins, shall continue to use, employ and receive, all and singular, the services of the said five negroes during the full end and term of the natural life of the said Samuel Tompkins, also, during the life of the said Polly Watts,

otherwise Polly Tompkins, without any manner of trouble from the said Robert Rutherford and Franklin Rutherford, or either of them; and the said Samuel, for the more free and clear disposal of the said five negroes unto the said children of the said Polly, and to their heirs and assigns, doth make and execute this reasonable instrument, or conveyance in writing, with the special reservation to the said Samuel and Polly, as herein expressed. In witness whereof, the said Samuel Tompkins hath hereunto set his hand and affixed his seal, the day and year within written.

" Signed, sealed and delivered in presence of

his
"SAMUEL ⋈ TOMPKINS, [L. S.]
mark.

" WMS. RUTHERFORD.

" JESSE ARMSTRONG, J. P."

The following endorsement was written on the back of said deed, to-wit:

" I do hereby acknowledge to have delivered the negroes herein mentioned to Robert Rutherford and Franklin Rutherford, with the reservation herein specified, this 9th day of August, 1809.

his
"SAMUEL ⋈ TOMPKINS,
mark.

" WMS. RUTHERFORD.

" JESSE ARMSTRONG, J. P."

The deed was duly executed and delivered, after which, it was recorded in the office of the Clerk of the Superior Court of Washington county, on the 12th of August, 1809. Samuel Tompkins owned the negroes mentioned in the deed, and had them in possession at the time the same was executed. The negro woman, Harriet, sued for in this case, is a child of the negro woman, Rhody, mentioned in the deed, and the other negroes sued for, are the children of the said Harriet. Samuel Tompkins and Polly Watts, *alias* Polly Tompkins, had eight children, to-wit: John W., Elizabeth, Samuel, Polly, William, Stephen W., Dolly, and Nancy. John W.

married Polly Smith, Elizabeth married Thomas Williams, Polly married Harman Howard, William married Ellen Couch, Stephen W. married Serena Williams. Thomas Williams afterwards died, and his widow, Elizabeth, married a man by the name of Spear. Nancy married Joseph Miller. Samuel died in 1822 or 1823; Dolly died in 1837; Stephen W. died in 1837; William died in 1842 or 1843; John W. died in 1855 or 1856. Old man Samuel Tompkins, the maker of the deed, died the 23d of February, 1856, and Polly Watts, *alias* Polly Tompkins, died in 1837. The negroes sued for were converted by the defendant, Snelling, to his own use, and were worth, according to his estimate, the aggregate sum of $6,275 00, and were worth, for hire, $242 00 annually; and, according to the estimate of another witness, the negroes were worth $8,000 00, and were worth, for hire, $450 00 per annum. The negroes came into possession of defendant in July, 1856, upon the death of his father, R. J. Snelling, of whose estate defendant was the legal representative. Obediah R. Lewis was regularly appointed administrator *de bonis non* on the estates of Stephen W. Tompkins, and Jno. W. Tompkins, deceased, and Harman H. Howard was also duly appointed administrator of William Tompkins, deceased. This action was commenced on the 25th of September, 1857.

In behalf of the defendant, the following facts were adduced, and put in evidence, to-wit:

The admission of plaintiffs' counsel, that Samuel Tompkins and John Thornton were both dead, and that John West, if present, would prove that the signature of said Thornton to the bill of sale, hereinafter set forth, was his genuine signature. Upon this admission, counsel for defendant tendered as evidence, the original bill of sale, of which the following is a copy, to-wit:

"LUMPKIN, August 9, 1839.

"I have received of R. J. Snelling seven hundred and fifty dollars, in full payment for a certain negro woman, named Harriet, about fifteen years old, which negro I do

warrant to be sound and healthy in body and mind, and a slave for life, and I do further warrant and defend the title for the same.

his

"SAMUEL ⋈ TOMPKINS.

mark.

" JOHN THORNTON."

Counsel for the plaintiff objected to said bill of sale as evidence, on the ground that it was not sufficiently proven; and also objected to said bill of sale being admitted in evidence to show that Snelling was a purchaser of the negro for value, as recited therein.

The presiding Judge overruled the objection, and admitted the evidence, and the plaintiffs excepted.

The presiding Judge charged the jury, amongst other things, as set out in the motion for a new trial, in a subsequent part of this statement.

The jury returned a verdict for the defendant.

Counsel for plaintiffs moved for a new trial, on the following grounds:

1. Because the Court erred in admitting in evidence the bill of sale from Samuel Tompkins to R. J. Snelling, over the objections made thereto by counsel for plaintiffs to said bill of sale being admitted in evidence, to show that Snelling was a purchaser of the negro for value, as recited therein.

2. Because the Court erred in charging the jury: "That the recital in the bill of sale, as to the receipt of the purchase money for the negro girl, Harriet, was *prima facie* evidence against the plaintiffs of the fact of such a payment of the purchase money by R. J. Snelling;" and also erred in refusing to charge the following, as requested by the plaintiffs' counsel, to wit: "That said recital in the bill of sale was not evidence against the plaintiffs of the fact that Snelling paid the money."

3. Because the Court erred in charging the jury: "That the subsequent sale of the negro by Tompkins to Snelling was evidence to be considered by them, of the intent of Tompkins, at the time of the execution of the voluntary

deed, to perpetrate a fraud on subsequent purchasers or creditors; that it is a circumstance to be considered by them in determining whether the voluntary deed was made with intent to defraud."

4. Because the jury found contrary to the following charge of the presiding Judge, to-wit: "That although the old deed was voluntary, and although the jury might believe that Snelling was a subsequent purchaser from Tompkins *bona fide*, for a valuable consideration, and without notice, yet the old deed was not void as to Snelling, unless it was made with intent to defraud, and that Tompkin's possession of the property being consistent with the old deed, was not evidence of, or was not a badge of fraud."

5. Because the jury found contrary to the charge of the Court.

6. Because the jury found contrary to law.

7. Because the jury found contrary to evidence, and contrary to the weight of the evidence.

The presiding Judge overruled said motion, and refused the new trial, on each and all the grounds taken in the motion.

This decision is the error complained of in this case.

JOHNSON & SLOAN for plaintiffs in error.

E. H. BEALL for defendant in error.

*By the Court.*—JENKINS, J., delivering the opinion.

On the trial of this case in the Court below, the jury found for the defendant, and the plaintiffs moved for a new trial, on several grounds. The refusal of the Court to grant a new trial is the error complained of, and we proceed to examine the grounds overruled.

1. A bill of sale from Samuel Tompkins (under whom plaintiffs claim) to the defendant, Snelling, for one of the slaves in dispute, was offered in evidence by the defendant, upon proof that the maker and subscribing witness were both dead, and that the signature of the subscribing witness is the

genuine signature of John Thornton, the witness; plaintiff objected, that the proof of execution was insufficient. The Court overruled the objection, and this is the first ground taken.

The current of authorities sustains the decision. There are cases to the effect, that the proof of the handwriting and signature of the maker, where the witness is dead, will be sufficient. We know of none that it is indispensable; and there are many that the regular course is to prove the signature of the subscribing witness. It is so laid down in Harrison's Digest, vol, 1: 2869, citing Page *vs.* Mann; M. & M., 79, Tenterden; J. P. Kay *vs.* Brockman, 3 Car. & P., 555; M. & M., 286, Best.

So, if one of the subscribing witnesses be dead, and the other beyond the process of the Court, it is sufficient to prove the handwriting of the witness that is dead. Adams *vs.* Kerr, 1 B. & P., 360.

It is the more proper in this case, inasmuch as the maker signed by his mark.

This ground of the motion was properly overruled.

2. The second ground alleges error in the charge of the Court, to this effect: "That the recital in the bill of sale, (above mentioned,) as to the receipt of the purchase money for the negro girl, Harriet, was *prima facie* evidence against the plaintiffs of the fact of such payment of the purchase money by Snelling," (the defendant,) and in the refusal of the Court to charge the contrary on request.

The rule is, that such recitals in deeds and other instruments, are evidence against the maker, and against persons claiming under him by *subsequent* conveyances.

In the case of Horn *vs.* Ross and Keith, 20th Ga. R., 210, 221, (being a claim case, and one Harvard, defendant in execution,) a recital in a deed made by Harvard was relied upon by claimant, against plaintiff in execution, Judge Benning delivering the opinion, first establishes the fact, that the plaintiffs in execution claim under Harvard, and then adds: "The only remaining question is, did they claim under him by a right that arose subsequently to the date of the deed,

and consequently, to the date of the recital? The answer is, that they did." He then concludes, that, by the general principles governing such cases, they are bound by the recital.

The general principle he thus affirms—page 220: "Declarations made by a person, if adverse to his interest when made, are evidence against him, and against all persons claiming under him by a right arising subsequent to the declarations," citing 1 Taunt., 161; 2 Phil. Ev., Cow & Hills' Notes, note 481.

Applying this rule to the case at bar, and taking the converse of the proposition to be true, viz: That declarations of a party do not bind those claiming under him by a right arising *prior* to the declarations, we hold that the Court erred, both in the charge given, and in the refusal to charge, as requested; the fact being, that plaintiffs' claim, under Tompkins, by a deed made thirty years before the date of the recital in the bill of sale.

Any other doctrine would be exceedingly dangerous, for it would put it in the power of the vendor always to defeat a prior voluntary conveyance, however fair and valid, by a simple recital in a subsequent deed.

3. The third ground imputes error to the Court, in that he charged the jury: "That the subsequent sale of the negro by Tompkins to Snelling, was evidence to be considered by them, of the intent of Tompkins, at the time of the execution of the voluntary deed, to perpetrate a fraud on subsequent purchasers or creditors; that it is a circumstance to be considered by them, in determining whether the voluntary deed was made with intent to defraud."

It will be seen, when, in considering the next ground, we review the rulings of this Court on this whole subject, that a conveyance of property to a purchaser, for valuable consideration, without notice of a prior voluntary conveyance of the same property, is, itself, presumptive evidence of fraud in the prior voluntary conveyance. This being so, it was not error in the Court to instruct the jury, that they might consider the subsequent conveyance, for value, without notice, "*as a circumstance*" in determining the question of fraud, or

no fraud, in the prior voluntary conveyance. It was equivalent to saying, such subsequent conveyance is not conclusive evidence of fraud, but it must be considered by you as evidence.

4. Error is assigned against the verdict, as being contrary to the charge of the Court, as set forth in the 4th ground. (For which, see statement.)

If this charge was correct, and if the facts warranted its application to the case, the verdict was erroneous. If the charge were erroneous, the verdict should not be disturbed. We will subject this charge to the test of previous rulings of this Court upon this question of law, and it would seem to be appropriate, in this connection, to review those rulings, as an impression seems to prevail (erroneously, we think,) that they are inconsistent, some with others.

The question came first before the Court, in the case of Fleming vs. Townsend, 6th Ga. R., 103. The Court, at that early day in its existence, seem to have been impressed with the importance of prescribing a rule, which would govern all cases wherein a contest should arise between volunteers and subsequent purchasers for value. Our impression is, that the profession, upon careful consideration of that case, will find in it a rule for almost any, whatever be its facts, involving this question, that may demand their consideration. Judge Nisbet, who delivered the opinion, carefully reviews the whole doctrine, considered with reference to the common law, and as affected by the statutes, 13th and 27th Elizabeth.

The learned Judge states this to be a general rule of the common law, " That a voluntary conveyance is void, against subsequent *bona fide* purchasers, for a valuable consideration, without notice." 107.

He considers the statutes 18th and 27th Elizabeth, and although, by the terms of the 13th, purchasers are excluded, and, by the terms of the 27th, personalty is excluded, he considers that the spirit of each act embraces both purchasers and personal property. The two being in *pari materia*, he thinks, in all such cases, they should be construed together as one act of legislation, and concludes this view with these

words, " It is clearly the policy of our State to extend the provisions of the statute of Elizabeth (27th) to personal property." 107.

On the subject of notice, he shows that " very many decisions in England, of the highest authority, go the extent that a voluntary conveyance is void against a subsequent purchaser for value, *even with notice*," and quotes this commenting upon them by Chief Justice Marshall, in Cathcart *et al. vs.* Robinson, 5 Peters, 279, " These decisions do not maintain that a transaction, valid àt the time, is rendered invalid by the subsequent act of the party. They do not maintain that the character of the transaction is changed, but that testimony, afterwards furnished, may prove its real character. The subsequent sale of the property is carried back to the deed of settlement, and considered as proving that deed to have been executed with a fraudulent intent, to deceive a subsequent purchaser." Judge Nisbet adds, "The fraud was made to depend alone upon the evidence furnished by the subsequent sale. That was held conclusive, even with notice, and could not be rebutted in some of the cases,"—sundry cases as cited. Other cases are then cited, to show a relaxation of this rule, in England, in favor of volunteers against purchasers, with notice.

Stating, upon the authority of Chief Justice Marshall, that " the construction of the statute of Elizabeth was very unsettled in England at the era of the American Revolution," he thus concludes: " The decisions, however, unquestionably went so far as to make a subsequent sale to a purchaser, without notice, presumptive evidence of fraud, against one who had made a settlement, not on a valuable consideration, which threw on a person claiming under such a settlement the burthen of proving that it was *bona fide*. This is the rule of the Supreme Court of the United States, and of most of the Courts in this country. It seems consonant with reason and equity, and we adopt it as the rule of this Court." 111.

Here, then, we have involved in this ruling three propositions. 1st. A voluntary conveyance is *prima facie* void

against a subsequent purchaser for value, without notice. 2d. This conclusion of law is reached by treating the subsequent conveyance for value, without notice to the purchaser, as presumptive evidence of fraud in the voluntary conveyance. 3d. That this *prima facie* case may be rebutted by evidence of the *bona fides*, of the voluntary conveyance. Thus are we furnished with a general rule, the reason upon which it rests, and a qualification of it. Add to this the words next succeeding the above quotation, viz: "Our judgment is, that a subsequent purchaser is not protected, unless he buys *without notice*" and what immediately follows, declaring what shall be notice, (not necessary to our present purpose), and it will be found that the entire ground is covered.

If the evidence, in any case, disclose a voluntary conveyance simply, without the attendant circumstances, or motives, or inducements to its consideration, and subsequent conveyance for value, without notice to the purchaser of the prior voluntary conveyance, and there stop, the general rule controls, and the subsequent purchase is preferred. If, on the other hand, there be in the case *aliunde* evidence that the voluntary conveyance was *bona fide*—free from all fraud, the qualification comes to the relief of the volunteer, and gives him the preference. If, again, the evidence present a case of a voluntary conveyance, and subsequent conveyance for value, *with* notice to the purchaser of the prior voluntary conveyance, and nothing more, the presumptive evidence of fraud is wanting—the subsequent purchaser has no *prima facie* case, there is nothing to be rebutted, and the volunteer is preferred.

I propose, now, to refer to subsequent cases in which this question has come, in some one of its phases, before this Court, for the purpose of showing that the rule in Fleming and Townsend has not been infracted. The next case was that of Fowler vs. Waldrip, 10 Ga. R., 350. That was a case of a voluntary conveyance, and a subsequent conveyance for value. There was an attempt on the part of the pur-chaser for value, to show affirmatively and by *aliunde* evidence, fraud in obtaining the voluntary conveyance. Opposed

to this, the volunteer introduced a witness to prove that the voluntary conveyance was *bona fide*. Furthermore, there was evidence of notice to the subsequent purchaser. This Court held the notice sufficient, and on *that* ground, placed their judgment in favor of the volunteer; thus bringing the case within the third class above enumerated, under the ruling in Fleming and Townsend, and in entire consistency with that case.

.The next case in order of time is that of Harper vs. Scott, 12th Ga. R., 125. The great contest in this case, was upon the question whether or not there was a valuable consideration for the first conveyance. There was no pretence that the subsequent purchaser for value had notice of the prior conveyance. There was no evidence to rebut the presumptive evidence of fraud. This Court, after careful and elaborate examination of the evidence, arrived at the conclusion that the first conveyance was certainly voluntary, and then held that, according to the spirit of 27th Elizabeth, and according to the common law rule, that conveyance was void against the subsequent purchaser for value, without notice, thus bringing it under the first class of cases I have deduced from Fleming and Townsend.

Next came the case of Clayton vs. Brown, 17th Ga. R., 217. There had been a conveyance by one Reeves to Clayton, of certain property in trust for his wife and children. Subsequently, a creditor of Reeves obtained judgment against him, levied on a portion of the property so settled, which was sold by the sheriff, and bought by Brown, the defendant. The Court below, in charging the jury, treated it as a case between a volunteer and a subsequent purchaser for value, without notice. This Court held that the case had not been properly presented—that the purchaser, at sheriff's sale, could be in no better position than the creditor under whose judgment he purchased—that it was a case between volunteers and creditors, *in which the question of notice was not involved*—and for this error in the presentation of the case, as well as for misdirection regarding continued possession in the settler,

sent the case back for a re-hearing. This case was wholly aside from that of Fleming and Townsend; therefore,

In Brown and others vs. Burke, 22d Ga. R., 574, the ruling was, that "a subsequent sale, without notice, by a person who had made a settlement, not on valuable consideration, is presumptive evidence of fraud, which throws on those claiming under the settlement, the burthen of proving that it was made *bona fide.*" This is strictly in accordance with the ruling in Fleming and Townsend, inasmuch as it recognizes both the ground rule and the qualification of it, as there declared.

I refer, lastly, to the unpublished case of Black *et al.* vs. Thornton, decided at Athens, November Term, 1860, which, however, in manuscript, was referred to in the argument of this case, and seemed to be regarded as in conflict with Fleming and Townsend. In that case, the Court below had given, in charge to the jury, the *general rule* adopted in Fleming and Townsend, viz: that a subsequent purchaser for value, without notice, of a *prior* voluntary conveyance, would be preferred to a volunteer, and we sustained him in it. There was no attempt to rebut the presumptive evidence of fraud arising from the subsequent sale. So far from any such redeeming evidence in favor of the voluntary conveyance, there were, in my view of the case, strong circumstantial proofs of fraud in the voluntary conveyance, wholly irrespective of the want of notice. We also sustained the Court in refusing certain charges asked, on the ground, that, if given, they would probably have conveyed to the minds of the jurors the impression, that the purchaser, without notice, must go farther, and give *aliunde* proof of fraud in the making of the voluntary conveyance. That case came under the general rule in Fleming and Townsend. There was nothing to call for the application of the qualification, and, therefore, it was not given. There is no conflict whatever in the two cases.

The profession will readily acquiesce in the suggestion, that the opinion and judgment of the Court should always be considered in connection with the facts. To many general

rules of law there are exceptions or qualifications, as well settled as the rule itself. When the facts of the case call only for the general rule, it is unnecessary to do more than apply *it*. If the facts demand the exception or qualification, the necessity to declare and apply *that* arises. If it were necessary, in each case, to refer to all the law appertaining to the particular branch of the science under consideration, each judicial opinion would swell to the dimensions of a treatise.

Applying the law, thus understood, to the charge in question, and considering it in connection with what immediately preceded, (as set forth in the 3d ground,) it will appear that the charge was correct. It contains an instruction to the jury, to consider the presumptive evidence of fraud, arising from the act of making a subsequent conveyance, for value, without notice; and this is qualified by the instruction, that the prior voluntary conveyance is not necessarily thereby invalidated—that it must appear that the voluntary conveyance was made with intent to defraud. This was rendered proper by *aliunde* evidence before the jury, tending to establish the *bona fides* of the first conveyance.

· The application of this charge to the evidence, to ascertain whether or not the jury found contrary to the charge of the Court, fairly involves the consideration of the only remaining question raised in the sixth and seventh grounds, viz: whether or not the jury found contrary to the evidence, or to the weight of it. Was there before the jury enough to rebut the presumptive evidence of fraud? There was, first, the very significant fact that thirty years intervened between the two conveyances. This was certainly a very long incubation of a fraudulent intent. This is not an immaterial consideration. I would say that, as a general rule, the strength of the presumption of fraud, arising from the second conveyance for value, without notice, and by relation, affecting the first, is, inversely, as the length of time intervening the two. As the latter increases, the former decreases. Where the intervening time is very short, an impartial mind would readily take the impression, that the first conveyance was but a fraudulent preparation for, or preliminary to, the second.

Vol. xxxii—14.

But where, as in the present case, a very great length of time intervened, such a mind would reluctantly yield obedience to an arbitrary rule of law, requiring it to connect the two acts, and to characterize the first by the last.   Such a mind would take a decided impression from that circumstance alone, and would readily avail itself of the privilege found in the relaxation of the rule, to scrutinize the facts closely in search of evidence rebutting the presumption.   Taking this direction, we find, in the evidence, weighty circumstances surrounding the donor at the time of the execution of the voluntary conveyance, strongly inciting him, by every consideration of simple justice and of natural affection, to execute it.   He had married, and soon found himself grossly imposed upon and outraged.   His wife brought to his bridal bed the embryo fruit of illicit intercourse.   This would have entitled him to a divorce *a vinculo ;* but, waiving that right, he simply returned to those who gave her, their prostituted gift.   Subsequently, and during her life, he very improperly and unwisely took to his bed and his board another woman, passing, with her, through the mockery of a formal marriage.   She, though not legally his wife, seems, by the faithful performance of a wife's duties, to have merited and to have received from him a husband's devotion.   She bore him children, all unaware that the taint of illegitimacy fastened upon them at their births and clung to them through their lives.   Under these circumstances, the voluntary conveyance before the jury, making provision for these children and for their mother, was executed.   Such is the testimony of one of the subscribing witnesses.   The deed itself teems with references to the illegitimacy of his second marriage, and to the illegitimacy of the fruit of that connection.   What mind can resist the impression, that the ruling idea in his mind in the making of this settlement was, that he owed it as a duty to those thus dear to, and dependent upon, him, yet incapable, by his own false step, of inheriting from him, to make some provisions for them, by voluntary settlement?   It is difficult to conceive of a stronger case of rebutting evidence, than is presented by the great length of time intervening the two con-

veyances, and the other circumstances alluded to.  Courts
and juries should never lose sight of the fact, that in such
cases there may be such a thing as a fraud practised, or at-
tempted, by the donor upon the *volunteer;* and where such a
case is presented, they should be no less astute to defeat it,
than in other cases to defeat fraud against a purchaser for
value.  Our conclusion is, that this verdict is contrary to the
charge of the Court, and strongly and decidedly against the
weight of evidence; and for this reason, as well as for error
in the charge relative to the effect of the recital of payment
in the bill of sale, reverse the judgment of the Court below
overruling the motion for a new trial, and adjudge that the
verdict be set aside and a new trial granted.

Judgment reversed.