### CHARLESTON AND WESTERN CAROLINA RAILWAY COMPANY v. FLEMING.

1. Where one lays out a wagon-road entirely on his own land, he has the same title to the road as to any other part of the land; and if a railroad company condemns a right of way through the land and across the wagon-road, it acquires the same title to the wagon-road as to the remainder of the tract condemned.
2. One of several tenants in common can not, without the consent of his cotenants, convey an easement in the land which is the common property of all.
3. To acquire a private way by prescription it is essential that the prescriber keep the way in repair for the period of prescription.
4. A private way of necessity will not be granted unless it is indispensable to the enjoyment of his property by the party claiming it.

Argued July 28, — Decided October 8, 1903.

Injunction.   Before Judge Gary.   Richmond superior court. June 18, 1903.

*William K. Miller,* for plaintiff in error.
*William H. Fleming,* contra.

CANDLER, J.   Fleming brought suit against the Charleston and Western Carolina Railway Company to enjoin it from closing or obstructing a wagon-road leading from his land across the right of way of the defendant.   It is alleged in the petition, that the road in question was in existence prior to the year 1858, when the property was owned by Charles DeLaigle, and that it has ever since been used by the owners of the property.   Fleming's property is a portion of the tract formerly owned by DeLaigle.   The

petition also showed that while Holt, one of the plaintiff's prede-
cessors in title, was in possession of the premises, "the Port Royal
Railway Company, under which the defendant now claims, insti-
tuted proceedings to condemn a right of way 100 feet wide through
said lot . . and crossing said wagon-road;" that damages were
awarded Holt by the jury in the final trial of the condemnation
proceedings; but it is claimed that "in none of said condemnation
proceedings was any mention made of any intention to close up
said wagon-road, or in any way interfere with its free and unin-
terrupted use." It is alleged that the wagon-road, through its en-
tire length across the railroad right of way, does not exceed fifteen
feet in width; that the defendant, or those under whom it claims,
has had full knowledge of the long use of the road by the plain-
tiff and his predecessors; and that it now threatens and intends to
obstruct the road and entirely close it up, which would cause the
plaintiff irreparable damages. By amendment it was alleged that
"plaintiff, and those under whom he claims, have always kept said
wagon-road in repair, except that portion lying within the right of
way of the railroad." Other amendments to the petition were also
allowed, over objections of counsel for the defendant, in one of
which it was alleged that the wagon road in question is the only
means of egress and ingress between the plaintiff's property and
any public street or highway. The other amendment set up, that,
in a deed in the plaintiff's chain of title and under which he
claimed, "there was an express stipulation that the grantees should
have the right to cross the said right of way of the railroad by the
farm road as then laid out and used." To the petition as amended
the railroad company demurred, and its demurrers were overruled.
It also filed an answer, and on the trial evidence was introduced
by both the plaintiff and the defendant. The court passed an or-
der granting the injunction, and the defendant excepted.

1. The petition and the amendments thereto are silent as to
the exact nature of the road which it is sought to enjoin the de-
fendant from obstructing, but from the record and the briefs of
counsel it is plainly inferable that it is a private way lying en-
tirely upon the plaintiff's land except as to that portion which in-
tersects the right of way of the railway company. It is not dis-
puted that the wagon-road was in existence long before the rail-
road was built; that it was then wholly upon the land of the plain-

tiff's predecessors in title, and that the railroad was constructed across the wagon-road. It is axiomatic that one can not have an easement upon his own property, for the lesser estate, represented by the easement, will be merged into the fee, upon which it is subservient. 10 Am. & Eng. Enc. L. (2d ed.) 433. It follows that when the railroad was built, and the land, then belonging to Holt, the plaintiff's predecessor in title, was condemned, the rights of the landowner in the wagon-road were no greater than those in any other part of the land condemned, and the condemnation proceedings gave to the railroad company the same title to the portion of the wagon-road intersected by its right of way that it acquired to the remaining portion of the tract condemned.

2. Necessarily, then, any right in the plaintiff to maintain his wagon-road unobstructed across the right of way of the railroad company must have arisen since the condemnation proceedings to which reference has been made. It will have been observed that by one of the amendments to the petition the plaintiff alleged that he acquired the right to cross the railroad right of way at this point by express grant. It seems that by the will of Charles De-Laigle, executed in 1865, the property now owned by the plaintiff, and through which the wagon-road in question runs, was devised to the testator's daughter, Emma DeLaigle, for life, with remainder to such child or children of Emma DeLaigle as might survive her. While the life-tenant was still unmarried, the property was, by order of the superior court of Richmond county, sold for reinvestment, and Fleming bought from one holding under the purchaser at the sale had in pursuance of this order. Emma DeLaigle subsequently married, and at her death left a daughter, Bryan Harris Hughes. Within seven years from the death of her mother, Mrs. Hughes, as the remainderman under the will of Charles DeLaigle, brought an action of ejectment against Fleming, and recovered the property, the judgment of the lower court being affirmed by this court. *Fleming* v. *Hughes*, 99 *Ga.* 444. In 1897, Mrs. Hughes, together with certain cotenants to whom she had conveyed a half interest in the property, also brought suit against the railroad company for the strip of land covered by its right of way, and in the lower court recovered a judgment for the land, which, however, was reversed by this court, with direction that the question as to what compensation should

be paid the petitioners for the interest of the remainderman in the condemned strip should be submitted to a jury, and that upon payment of the amount thus found within a reasonable time the title to the property should vest in the railroad company.   *Charleston R. Co.* v. *Hughes,* 105 *Ga.* 1.   Subsequently to the affirmance by this court of the judgment in the case of *Fleming* v. *Hughes,* supra, and prior to the beginning of the suit by Mrs. Hughes and her cotenants against the railroad company, Mrs. Hughes made a conveyance of the property to the executors of Robert L. Fleming, from whom the plaintiff in the present case bought, and under a bond for title from whom he was holding the land at the time of the ejectment suit.   This deed provided that "all of said lot is conveyed hereby, except that portion occupied as a right of way by the Port Royal and Augusta Ry. Co.," to the property of which company the Charleston and Western Carolina Railway Company succeeded.   The deed also provided that "the grantor hereby permits the grantees to cross said right of way, so occupied, by an ordinary farm road, as now laid out and used, but not otherwise; but this consent is not to interfere with her or her grantees' rights against said railroad or its assigns."   By a separate instrument the cotenants of Mrs. Hughes joined in her deed to the land, with the exception "that we do not convey any interest in the right of way occupied by the Port Royal & Augusta Ry. Co., nor join in the warranty of Mrs. Hughes to the said lot."

It will have been seen that the claim of the plaintiff below that he is entitled by express grant to maintain unobstructed his wagon-road across the right of way of the railroad company is based upon the deed of Mrs. Hughes from which we have quoted.   It must be borne in mind, however, that at the time this deed was executed Mrs. Hughes owned only a one-half interest in the land conveyed, having sold the other half to Miller and Lamar; and while she expressly granted to the executors of Robert L. Fleming the right to cross the land occupied by the right of way of the railroad company, Miller and Lamar, her cotenants, expressly declined to grant any such right.   It is well settled that where land is owned by several tenants in common, no easement in the land can be conveyed by any except the entire number of the cotenants; for, as all of the land is owned by each of the cotenants, no **right** in it can be conveyed by one adversely to the others.

Am. & Eng. Enc. L. (2d ed.) 411 and note; Washb. Eas. & Serv. 46; *Boyd* v. *Hand,* 65 *Ga.* 469; *Swift* v. *Coker,* 83 *Ga.* 789. It necessarily follows that in view of the express refusal of Miller and Lamar to unite with Mrs. Hughes in the conveyance to the executors of Robert L. Fleming, of an easement over the strip of land occupied by the railroad right of way, her deed conveyed to the grantees named therein no interest whatever.

3. It is earnestly contended, however, that the plaintiff has a prescriptive right to maintain his wagon-road across the defendant's right of way. The fallacy of this contention should be readily apparent. We may leave out of consideration the length of time of the alleged user of this crossing by the plaintiff and his predecessors in title. It is well settled that in order to acquire a prescriptive right to a private way in Georgia the way must have been kept in repair, during the period of the running of the statute, by the one in whose favor the prescriptive right is claimed. Pol. Code, § 662; *Aaron* v. *Gunnels,* 68 *Ga.* 528; *Childers* v. *Holloway,* 69 *Ga.* 758; *Nott* v. *Tinley,* 69 *Ga.* 766; *Collier* v. *Farr,* 81 *Ga.* 749; *Buchanan* v. *Parks,* 111 *Ga.* 873. The plaintiff, in an amendment to his petition, alleges that he and those under whom he claims "have always kept said wagon-road in repair, except that portion lying within the right of way of the railroad." As has been seen, the portion of the road within the right of way of the railroad company was the only part thereof that it was necessary for him to keep up in order to gain an easement. It mattered nothing, so far as the railroad company was concerned, whether he kept up the wagon-road on his own land or not; but in order for him to acquire a private way by prescription across the land of the defendant, it was vitally necessary for him to keep in repair that part of the road which crossed its right of way. It makes no difference, therefore, if, as is contended by counsel for the defendant in error, the railroad company had more than six months knowledge of his user; for prescription could not begin to run in his favor until the requirements of the law, of which this was one, had been met.

4. The sole remaining contention of the defendant in error is that he is entitled to this private way across the right of way of the railroad company as a way of necessity to give him ingress and egress to and from his land. Some of the witnesses for the plaintiff testi-

fied that the road in question furnished the only means of access to the buildings on the land; but, on the contrary, there was undisputed evidence that Fleming owned a large tract of land lying on both sides of the wagon-road now under consideration; that there were other crossings over the railroad right of way in the immediate vicinity, with which it was entirely feasible for him to connect; that these other crossings intersected the railroad at a point where there were only one or two tracks, while the wagon-road under consideration crossed the right of way at a point in the railroad yards where there were six or eight parallel tracks to be crossed. There is an intimation in the brief of counsel for the plaintiff in error that a crossing had been offered the plaintiff by the railroad company at a convenient point on his own land, but there is nothing in the evidence to establish this fact. In view of the uncontradicted evidence as to the entire practicability of the plaintiff's crossing the railroad right of way at other points where crossings have already been established, the testimony to the effect that this wagon-road furnishes the only means of access to the plaintiff's buildings can only be taken as conclusions of the witnesses, which can not prevail in the face of proved physical facts to the contrary. " Where a way of necessity is appurtenant to land and the owner thereof purchases other land and makes, or can make, a way of access to a highway over his own land, the way of necessity ceases." Civil Code, § 3066. " ' Cases of necessity,' contemplated in that provision of the constitution which declares that ' in cases of necessity ' private ways may be granted upon just compensation first being paid, do not arise except where the way sought to be laid out is absolutely indispensable to the applicant as a means of reaching his property. If there is in existence a way suitable for all the purposes for which the property is to be used, a case of necessity does not arise, even though such way may be less convenient than the one proposed." *Chattanooga R. Co.* v. *Philpot,* 112 *Ga.* 153. An examination of the evidence in this case fails to show that any such necessity for this particular way exists as will authorize the grant of an injunction to prevent the defendant from obstructing it.

In view of what has been said, it follows that the grant of an injunction by the court below was erroneous. The judgment is

*Reversed.   All the Justices concur except Lamar, J., disqualified.*