307.  DURDEN *et al. v.* SOUTHERN RAILWAY COMPANY.

1. In the absence of charter limitations, contractual obligations, rule of the railroad commission, or statutory enactment to the contrary, a railway company may exercise its discretion in removing a side-track or spur at which it has been accustomed to receive and deliver freights as a common carrier.

2. As a common carrier a railway company owes to the public the duty of giving reasonable notice of the intention to abandon such a side-track, if the result of such removal is to leave no facilities for the receipt or delivery of such goods as it has been accustomed to receive and deliver there. From a breach of this duty a cause of action will arise in favor of one who, in response to the implicit invitation of the carrier to bring goods to that place for shipment, has so located his goods, intended for shipment, that, by the removal of the track and the discontinuance of shipping facilities without notice, he has been specially damaged.

3. What is reasonable notice in such cases is a question of fact for the jury; and, in determining it, the exigencies, both of the public, so far as its members are likely to be interested as shippers, and of the carrier, in the light of its private rights and public obligations, should be considered.

4. The damage recoverable by a particular prospective shipper, who, hav-ing arranged his property for shipment, is disappointed by the unex-pected removal of the facilities, is so much of his loss sustained by reason of such removal as he would not have sustained if reasonable notice of the intention to remove had been given by the carrier.

Action for damages, from city court of Macon—Judge Hodges. September 20, 1906.

Argued May 2,—Decided May 24, 1907.

*Joseph H. Hall, Warren Roberts,* for plaintiffs.

*N. E. & W. A. Harris,* for defendant.

POWELL, J. The error assigned in this case is the sustaining of a demurrer to the plaintiffs' petition. According to the allegations of the petition, the defendant is a foreign corporation, operating a line of railway in this State. The plaintiff, about two years prior to the bringing of the suit, bought a tract of land lying immediately on the line of the railroad. This land lies between the Ocmulgee river and the railroad, was bought for the wood and timber on it, and has little value for any other purpose. At the time the plaintiff purchased this land, there was located adjacent thereto, on the defendant's line of railway, a side or spur track, at which the defendant was receiving and had been for 15 years accustomed to receive and deliver cars of freight as a common carrier. For about two years defendant had been accustomed to receive from the plaintiff for transportation cars of wood at this side track. In February, 1906, without any previous notice being given, defendant removed this side track, and left plaintiff no means of delivering his wood for transportation. At the time the side track was taken up, plaintiff actually had on the railway right of way, awaiting cars, a quantity of wood. He also had 45 additional cords of wood cut and ready for transportation. All of said wood had been sold to customers in the city of Macon. There is no other available means of transportation, and a total loss of the value of the wood has been occasioned to the plaintiff by the removal of transportation facilities. Further, there are 500 cords of uncut wood on said land, for which plaintiff had a ready market, which will be totally lost by reason of the destruction of plaintiff's transportation facilities. By amendment to the petition, it is alleged that the side track was not a private side track, but was established and maintained for the benefit of the public, in the reception and delivery of freights by the carrier; also, that a portion of the cut wood previously referred to had been delivered actually in'o the custody of the carrier for shipment before the removal of the side track. The defendant demurred generally and specially. The effect of the demurrer is to assert that the defendant had the right to move the side track at its pleasure or discretion; that no contract to maintain the same is set forth; that no right of the plaintiff has been violated; that the defendant has failed in no duty due the plaintiff; also, that the damages alleged are too

remote and speculative. The trial court sustained the demurrers, and the plaintiff brings error.

1. The point involved in this case is somewhat novel; for, while there are several reported cases apparently cognate, each of them, so far as our research has disclosed, contains some feature which distinguishes it from the case at bar by reason of the peculiar facts or of the statute law of the jurisdiction where rendered. There are cases involving the right of railway companies to abandon stations once established, but special reference is usually had, in the determination of them, to the terms of charters, local statutes, or orders of railroad commissions. Some cases have involved breaches of contracts to maintain side tracks for the benefit of particular shippers. In this case no charter is involved, for the defendant is a foreign corporation, and no duty by charter is asserted, no special contract is alleged, no violation of State statute law is claimed. There is no rule or order of the railroad commission upon the subject. Looking to the common law, we find that, in the absence of charter requirements, statutory regulation, or special contract to the contrary, there is no inhibition against a carrier using its discretion in abandoning the stations at which it has been accustomed to receive freight. The safety of public travel frequently demands the abolition of side-tracks or spurs, and the discretion of the railway company in removing them will rarely be interfered with by the court. Jones *v.* Newport News & M. V. Co., 65 Fed. 736, 13 C. C. A. 95; Mercantile Trust Co. *v.* Columbus R. Co. (C. C.) 90 Fed. 148; Oman *v.* Bedford Co., 134 Fed. 64, 67 C. C. A. 190. The United States Supreme Court, in Northern Pacific R. Co. *v.* Washington Territory, 142 U. S. 492, 12 Sup. Ct. 283, 35 L. ed. 1092, held that a station at a county seat might be abolished; but this decision was by a divided court, and we really think that the dissenting opinion presents the sounder view.

2. However, from a recognition of a railway company's rights to remove the side track and to discontinue the receipt and delivery of freight at the place where it was located, it does not necessarily follow that the manner in which this right is exercised may not create a cause of action in favor of one who has been damaged thereby. We do not think that a common carrier can, without liability, hold out to the public either an actual or implied

representation that it will receive goods for shipment at a certain place, and then, without reasonable notice, withdraw its facilities for complying with its implicit invitation, to the injury of one who, upon faith of the carrier's representation, has, with the view of accepting the carrier's offer to receive goods at the place named, caused his goods to be placed in such position that the withdrawal of the facilities for shipment specially damages him. When the carrier erects a public station or side track, at which it receives and delivers goods for transportation, it in a sense makes to the public an open promise to receive goods there, a representation that it is ready and willing to perform there the duty to the public, of receiving goods for transportation. Individual members of the public have a right to act upon this open promise, this public representation, until due notice is given that the same is to be withdrawn. This is in line with the reasoning of the court of Queen's Bench in Denton v. Great Northern Ry. Co., 34 Eng. L. & Eq. Rep. 154. In that case the court says that such a course of dealing with the public amounts to a contract broken and a deceit perpetrated. Says Crompton, J.: "It is very much like the case of an advertisement offering a reward; . . but I prefer resting judgment on the duty and the obligation of the defendants as common carriers. It is not necessary for me to say . . whether the defendants are liable as for the breach of a particular contract made with the plaintiff; at the same time they are liable." Carriers have the right to change the schedules of their passenger trains, but, if the schedule be changed, or if a regular train be discontinued, without reasonable notice, a prospective passenger, who has arranged his affairs in contemplation of a maintenance of the schedule, may recover the damages actually sustained by him as a result thereof. Savannah R. Co. v. Bonaud, 58 Ga. 180. The duty of common carriers to anticipate that members of the public will arrange their affairs with reference to located shipping points, and will be specially damaged by a discontinuance of facilities at such points, without notice, is analogous to their duty to anticipate and to provide cars for handling the ordinary and varying volume of traffic likely to be offered for transportation along its lines. See the cases cited in footnote to the case of Houston Ry. Co. v. Campbell, 91 Tex. 551, 45 S. W. 2, 43 L. R. A. 225. The illustration given by Lord Campbell, C. J., in the case of Denton v. Great

Northern Ry. Co., supra, is also in point: "Now, suppose a ship advertised as lying in St. Katherine docks, and bound for Calcutta, and that she would carry goods at a certain rate, if sent within a certain time; and suppose that, relying on these representations, goods are sent, and the answer then is that the adventurers have changed their arrangements, that they got better freights, and that, instead of going to Calcutta, the ship is going to Jamaica. I think, under such circumstances, an action could be maintained by a party prejudiced against the parties making such representations to the public."

3. As to what is reasonable notice is a question of fact, a jury question. In determining what is reasonable, the exigencies, both of the public, so far as its members are likely to be interested as shippers, and of the carrier, in the light of its private rights and public obligations, should be considered.

4. Such damage as would have accrued to the plaintiff by the removal of the side track if the reasonable notice had been given is damnum absque injuria. In this case no damage can be allowed to the plaintiff because his standing timber is rendered less valuable. The failure to give the reasonable notice has not affected that. It is doubtless true that the plaintiff paid an enhanced price for it because he expected the shipping facilities to remain; but as to this his loss is similar, in legal contemplation, to what it would be if he had bought a mercantile business near a factory, at an increased price, because of the anticipated trade of the employees, and the factory had suspended operations. But as to the wood cut in the bona fide anticipation of shipment at this side track he may recover actual damages, if the allegations of the petition be sustained by proof. The measure of this damage is not necessarily the market value of the wood. In assessing this actual damage the jury may consider the expense incurred in getting the wood ready for shipment; and, if the allegation that there is no other feasible way of removing this wood be sustained, the actual deterioration, or even total loss of the wood, if the proof goes to that extent, based on its market value, may be recovered. The damage recoverable is so much of the loss sustained by reason of the removal of the side track as the plaintiff would not have sustained if reasonable notice of the intention to remove had been given. The trial court having sustained the demurrers, both general and

special, the judgment is reversed, with direction that further proceedings be had in accordance with this opinion. The trial court may require the petition to be amended to correspond with the views herein expressed.

*Judgment reversed, with direction.*