TIFT et al. v. GOLDEN HARDWARE COMPANY.

No. 16454.  JANUARY 11, 1949.

*Robert R. Forrester* and *Franklin, Eberhardt & Barham,* for plaintiffs in error.

*R. D. Smith, A. L. Kelley Jr.,* and *Steve F. Mitchell,* contra.

HAWKINS, Justice. (After stating the foregoing facts.) ■ The evidence is undisputed that the defendant, T. W. Tift, is the owner of the fee-simple title to the land traversed by the spur track in question. No reason has been called to our atten-

tion, and we are unable to conceive of any, which would place upon an individual owning and operating a spur track such as that here involved any greater duty than that imposed upon a public utility, engaged in the business of a common carrier, owning a spur track over which adjoining owners may receive rail service. Both this court and the Court of Appeals have repeatedly recognized the right of a common carrier, in its discretion, to dismantle and abandon a spur track which is maintained by it and over which adjoining owners receive rail service, where under no contractual or statutory obligation to maintain the same.. *Southern Ry. Co.* v. *Toccoa Rock Crushing Co.*, 47 *Ga. App.* 558 (171 S. E. 179) ; *Lucas* v. *Southern Ry Co.*, 130 *Ga.*. 606 (61 S. E. 404) ; *Durden* v. *Southern Ry. Co.*, 2 *Ga. App.* 66 (58 S. E. 299) ; *Southern Ry. Co.* v. *Byrum*, 135 *Ga.* 426 (69 S. E. 550). The trial court in its judgment recognized this principle by permitting the defendant to remove the crossties remaining on the right of way of the spur track, and we thirk properly so, for the record in this case fails to show that either the defendant or any of his predecessors in title ever received any consideration for or were under any statutory duty or contractual obligation to continue the maintenance of the spur track,. and such being true, the fact that its discontinuance may depreciate the value of the plaintiff's property affords no reason for its continued maintenance and operation by the defendant. *Southern Ry. Co.* v. *Toccoa Rock Crushing Co.*, supra.

■ The Code, § 85-1401, provides: "The right of private way over another's land may arise from express grant; or from prescription by seven years'· uninterrupted use through improved lands, or 20 years' use over wild lands; or by implication of law when such right is necessary to the enjoyment of lands granted by the same owner; or by compulsory purchase and sale through the ordinary, in the manner prescribed by Title 83, Private Ways."

It is not insisted by the plaintiff that it has acquired any express grant of the spur-track right of way, nor does the plaintiff insist that it has acquired the right of private way over the lands of the defendant Tift by compulsory purchase and sale, as provided for by the last sentence of the above Code section. It is insisted, however, that it has acquired a right of way or

easement by prescription, but we do not think this contention sound. In Nauman v. Treen Box Co., 280 Pa. 97 (124 Atl. 349, 32 A. L. R. 1344), it is held that there could be no prescriptive private way at common law, no matter how long or how much it might be traveled, for the reason that at common law the use of a private way was not treated as continuous, because its physical use depended upon some act of man, and each use was regarded as a separate and complete action, and that no prescriptive right could ripen. It is further pointed out in that case: that an easement of this character, though incorporeal, is an interest in land; hence, if it is to be decreed to be a permanent easement, the owner must, as in the case of other interests in land, have such a right to it as cannot be taken from him save as the result of his own act or neglect; that, under this test, a railroad siding, such as that here involved, is not a permanent easement, for it may be destroyed or rendered valueless by the acts of third parties over whom the plaintiff has no control, and despite strenuous objections made by him; that the city, by appropriate proceedings, may greatly change the grade of or vacate the street traversed by the spur track; that the railroad company may relocate its line without incurring any liability for so doing; and that in these and other ways the spur track or siding would be effectually destroyed as an easement, all of which would be beyond the control of the plaintiff. Thus, there being no prescriptive right of a private way at common law, the plaintiff could have acquired a prescriptive easement or right of private way only by virtue of statute. Our statutory provisions for acquiring a prescriptive private way are found in the Code, §§ 85-1401, 83-102, and 83-112, and these specifically provide that the private way shall not exceed fifteen feet in width and that the prescriber must have kept the private way open and in repair. In this case it is undisputed that the roadbed of the spur track here involved was sixteen or more feet wide, and the plaintiff has done nothing in the way. of labor and has expended nothing in keeping the spur track open and in repair. In the absence of these statutory requirements, no prescriptive right of private way over another's land can arise. *Kirkland* v. *Pitman*, 122 *Ga.* 256 (50 S. E. 117) ; *Carlton* v. *Seaboard Air-Line Ry.*, 143 *Ga.* 516 (85 S. E. 863, Ann. Cas. 1917A, 497).

■ Nor can the plaintiff rely upon the theory that the spur track is a way of necessity. In *Charleston and Western Carolina Ry. Co.* v. *Fleming,* 119 *Ga.* 995 (47 S. E. 541), it is held: "Before one can assert a way of necessity over the land of another, every essential requisite to such a right must affirmatively appear. Not only the necessity of ingress to and egress from his own land must exist, but it must further be alleged that there is no other suitable outlet." See also *Charleston and Western Carolina Ry. Co.* v. *Fleming,* 118 *Ga.* 699 (45 S. E. 664). The undisputed evidence in this case shows that the plaintiff has easy access to his warehouse building by way of the thirty-foot alley to the north of his building, extending from Central Avenue on the west to Love Avenue on the east.

■ Neither can the plaintiff rely upon dedication. There are certain essential elements to a valid dedication of land to public use: (1) an intention on the part of the owner to dedicate the property to a public use; (2) an acceptance thereof by the public; and (3) where implied dedication is relied upon, it must appear that the property has been in the exclusive control of the public for a period long enough to raise the presumption of a gift. *Healey* v. *Atlanta,* 125 *Ga.* 736 (54 S. E. 749); *Hyde* v. *Chappell,* 194 *Ga.* 536 (2) (22 S. E. 2d, 313). There is no evidence in this case that either the defendant or his predecessors in title ever intended to dedicate this right of way to a public use. The spur track was constructed by H. H. Tift many years ago to serve his own private business, and he later used it in his business of Tifton Terminal Company to serve businesses and industries which had been erected along the spur track. This was a private enterprise, privately owned, privately operated, and privately controlled until sometime in 1922, when he discontinued this business, sold his switch engine, and shortly thereafter died. From that time, it appears that those who were in control of his property began to sell certain portions of the spur track to the people who owned land adjoining it, and the remaining portion continued to be owned by his estate or his heirs at law, who have continued to control the same, relocating a portion of it on one occasion. There is no evidence that either H. H. Tift or his successors in title ever intended to dedicate the spur track to a public use, or that it has ever been accepted as

public property by any body or political subdivision representing the public, or that it has been used generally by the public, but only by those comparatively few who owned lands adjoining the spur track.

■ It is further contended that the plaintiff acquired some right in the spur track by reason of the recitation contained in the deed from the heirs at law of H. H. Tift to Central Grocery Company, dated April 9, 1923, wherein it is provided: "This conveyance is made subject to an easement for the use of the railroad track now on said above described land and ground sufficient for said track for the use of such persons, firm, or corporation as may now or hereafter be served over said track from either end of same." The plaintiff acquired its property in 1916, long prior to the execution of the deed to Central Grocery Company, above referred to. The plaintiff is not a party to this deed and does not claim title under it. Accordingly, it avails the plaintiff nothing, for recitals in a deed are binding only upon the parties thereto or their privies. *Yahoola River &c. Mining Co.* v. *Irby,* 40 *Ga.* 479; *Howard* v. *Snelling,* 32 *Ga.* 195; *Hitchcock* v. *Hines,* 143 *Ga.* 377 (85 S. E. 119); *Hanks* v. *Phillips,* 39 *Ga.* 552 (2); *Dixon, Mitchell & Co.* v. *Monroe,* 112 *Ga.* 158 (3) (37 S. E. 180); *Campbell* v. *Sims,* 161 *Ga.* 517 (2) (131 S. E. 483). And even though such recitals in the deed might operate as an estoppel against the defendant and in favor of Central Grocery Company in an action founded on the deed itself, it would not so operate in favor of the plaintiff in this collateral action. *Hughes* v. *Cobb,* 195 *Ga.* 213, 234 (23 S. E. 2d, 701); *Coldwell Co.* v. *Cowart,* 138 *Ga.* 233 (75 S. E. 425).

■ It is also contended by the plaintiff that it has acquired the right to the use of the spur track as an easement running with the land, under the provisions of the Code, § 85-1404, which provides: "A parol license is primarily revocable at any time, if its revocation does no harm to the person to whom it has been granted; but is not revocable when the licensee has executed it and in so doing has incurred expense. In such case it becomes an easement running with the land."

The evidence discloses that at the time the plaintiff purchased from H. H. Tift a portion of the property upon which its warehouse is located, H. H. Tift granted to the plaintiff a parol

license to use the spur track and consented to furnish rail service to the plaintiff's warehouse, and that the plaintiff purchased the land and constructed the warehouse at considerable expense on the faith of this promise. Counsel for the plaintiff cite in support of this contention the following cases: *Waters* v. *Baker*, 190 *Ga.* 186 (8 S. E. 2d, 637); *Dickey* v. *Yarbrough*, 186 *Ga.* 120 (197 S. E. 234), and cases therein cited. We are in full accord with the principles announced by this court in the *Waters* case, that, "Although a parol license for the use of land is revocable at any time if its revocation does no harm to the licensee, yet where the licensee has executed it and in so doing has incurred expense, it is irrevocable and becomes an easement running with the land." But the plaintiff's evidence does not bring its case within those principles, for the reason that it has done nothing to execute the license, and has incurred no expense and made no investment in the license itself. The spur track was already in existence and suitable for use at the time the plaintiff acquired its property, and the plaintiff has done nothing to enhance the value of the spur track or to improve its usefulness so far as the licensor is concerned. The plaintiff did acquire its property and construct its warehouse, but these it still has; it merely improved its own property in the expectation of enjoying the license, and, as pointed out by Mr. Justice Bell, in *Miller* v. *Slater*, 182 *Ga.* 552 (186 S. E. 413), "under the authorities this was not such an expenditure as would make the license irrevocable." Although, as appears from the preceding statement of facts, it was alleged in the plaintiff's amendment, allowed August 25, 1948, that, just prior to June 14, 1916, when the plaintiff acquired from the late H. H. Tift a portion of the lot on which the present warehouse is situated, the plaintiff had a spur track at the rear of its main hardware building, just across the alley from the defendant Tift's building, and that it had rail service from such track from Captain H. H. Tift, doing business as Tifton Terminal Company, and that at the request of H. H. Tift, the plaintiff agreed for the removal of such spur track in the rear of its main hardware building and acquired the site of its new warehouse from Central Grocery Company and H. H. Tift for service by rail at the new location—there was no *evidence* of the plaintiff's consent to the removal of the spur track referred to

in this amendment. The plaintiff's witness, J. J. Golden, testified: "When the Golden Hardware Company was erected, there was a track in this thirty-foot alley. I couldn't tell you when the track was moved but it was removed prior to the construction of my warehouse. This warehouse was constructed in 1916. . . . They had already taken up the track in the 30-foot alley and I purchased the land across the street." None of the other evidence introduced tended at all to support the allegations of the amendment set out above. However, under the authorities cited in the first division of this opinion, H. H. Tift and his successors in title had a right to discontinue this track with or without the consent of the plaintiff, so that even had the plaintiff consented, as alleged in the petition, he would have parted with nothing thereby.

The belated tender made by the plaintiff in its amendment to the petition, allowed and filed August 25, 1948, after the interlocutory hearing on June 18, 1948, can avail the plaintiff nothing. In the first place, the plaintiff denies that any such offer was ever made by the defendant to convey to it the spur track adjacent to its property for the sum of $500, but says that, if the defendant contends that it was made, it is now accepted, and the plaintiff tenders to the court—not to the defendant—the sum of $500. But, this tender is not for so much of the spur track as adjoins the plaintiff's building, but for "at least thirty-five feet of such track and land upon which it was originally located not less than thirty-four feet east from the abutting line on the west of petitioner's warehouse building, which would serve petitioner by rail at his warehouse." This so-called tender comes too late, after the withdrawal of the offer by the defendant, and even if in time, is not unconditional, but for more track and land than was included in the offer.

■ Under no theory of the case was the plaintiff entitled to the relief sought, and the trial court erred in restraining and enjoining the defendant, his servants, agents, and employees from going upon or using any portion of his own property, and in authorizing the plaintiff to reconstruct and use a spur track over the property of the defendant.

*Judgment reversed. All the Justices concur, except Bell, J., disqualified.*