CHARLES W. STILL, exo'r, plaintiff in error, vs. THE MAYOR AND COUNCIL OF THE CITY OF GRIFFIN, defendant in error.

When, in founding a city, certain lots are reserved, and dedicated by the founder to particular public purposes, and the donees fail or refuse to accept the same, these lots revert to the grantor; and the vendor's lien for the unpaid purchase money attaches upon said lots, or rather, has never been detached, inasmuch as the title to the same has never passed out of the donor.

In Equity, from Spalding county.    Tried before Judge CABANISS, at November Term, 1858.

This was a bill filed by plaintiff in error, in Spalding Superior Court, to enforce his vendor's lien for the unpaid purchase money on certain parcels of land in the city of Griffin, sold to the Monroe Railroad and Banking Company, by complainant's testator, Bartholomew Still, deceased, and set apart and dedicated by said company to certain religious denominations, as places for the erection of houses of worship, when

Still, ex'or, vs. Mayor and Council of Griffin.

the town of Griffin was laid out, but which never had been accepted or used by said denominations.

The cause proceeded to trial on the bill, anwser and replication. The conveyance of the lands by Bartholomew Still, to the Monroe Railroad and Banking Company, was admitted in the answer of the defendant; and that the Monroe Railroad had been sold out, and was insolvent; and that all its assets and franchises had gone into the hands of the Macon and Western Railroad Company, as the legal successor of the Monroe Railroad and Banking Company. Letters testamentary were introduced by complainant.

*Lewis L. Griffin* testified: That he was President of the Monroe Railroad and Banking Company from its organization to January, 1842, and that while he was such President, he bought of B. Still said lands, in his *individual* capacity, and afterwards, and by and with the consent of the said Still, the said company took up his notes, and gave theirs in the place; that he signed the notes as President, by the order of the board of said company, and that it was for the lands on which the city of Griffin was laid out in 1842; that he thought he paid, in his individual capacity, part of the purchase money for the land, and afterwards, when the railroad company took up his notes, they paid him what money he had paid out; that there was no security given; that the notes mentioned in the bill are the same notes; he was President when the notes were signed, and signed them by express order of the board of said company. That he bought these lands in his individual capacity, for the purpose of founding a city, and the company promised to carry the plan out.

The notes having been lost, *Amos W. Hammond* testified: That he had the original notes; that no other person has had them; that he made the copies attached to the interrogatories of Griffin from them, and that they were lost, and that he knew they were made by L. L. Griffin, President of the

Monroe Railroad and Banking Company; that he knew his hand writing.

The map by which the city was laid out was exhibited.

*Alexander Belamy* testified: He knew the lots which were reserved at the sale, by the map just produced; the Episcopal and Protestant Church lots are now vacant; the Presbyterian Church lot and Female Academy lots are both occupied; there is a lot which was reserved for ornamental purposes now enclosed, but not occupied; the Cumberland Presbyterian Church lot is not occupied by them; the Baptist and Methodist Church lots, and Male Academy lots, are occupied; the public square is not enclosed; the public parade ground is not occupied; the court house lot, containing four acres, not occupied; all these lots are on 145, 2d dist. originally Monroe county, now Spalding; all these were reserved for public purposes, and lots were sold according to the map by which the city was laid out.

*William Leak* testified: That he was present when the lots were sold, and B. Still was present when the first lot was sold, and gave no notice of his vendor's lien; don't know that he was present when all the lots were sold; the plaintiff's testator, B. Still, acted as agent of the railroad company in selling lots, and had a plan of the town, and sold according to that plan; that plan was like that introduced in this case; he gave no notice of his vendor's lien; he showed lots to those who wanted to purchase.

*J. B. Phillips* testified: That he was present at the sale of these lots by this map, and Still gave no notice of his lien at the time of the sale.

The Court charged the jury: "That if B. Still was present at the sale of the lots in Griffin, and stood by and permitted persons to bid off lots, without asserting his lien, he is *estopped* from afterwards setting it up. The vendor's lien is a secret lien, and not favored by the law—a purchaser for a valuable consideration, and without notice of the lien, holds the land purchased *discharged* from the vendor's lien."

Counsel for the complainant requested the Court to charge the jury, that if the Mayor and Council of the city of Griffin held the lots reserved for public uses, without having paid value therefor, they are volunteers, and not entitled to notice of the lien, and so far as they are concerned, notice need not have been given. The Court refused to give this request in charge, but charged, " that if the plaintiff's testator, B. Still, stood by at the sale, when lots were reserved for public use, and permitted bidders to buy lots, with reference to such reservations, and pay a valuable consideration for them, without asserting or making known his vendor's lien, he cannot now set up his lien upon lots so reserved; to which charge and refusal to charge, as requested, complainant excepted.

The jury, under the testimony and charge of the Court, found a verdict against the complainant for the cost.

Whereupon, counsel for complainant tendered their bill of exceptions, assigning as error the aforesaid charge and refusal to charge.

HAMMOND & SON, for plaintiff in error.

ALFORD, contra.

By the Court.—LUMPKIN J. delivering the opinion.

Conceding that the conduct of Still, at the public and private sales of lots in Griffin, amounted to a waiver of his lien as vendor, upon all of the lots which were bought by individuals, and those lots, and squares and streets that have been appropriated to the public purposes for which they were reserved, is he estopped from enforcing it against those which never have been so used? We think not; and the Court erred in not so discriminating in its charge to the jury.

The Monroe Railroad and Banking Company never made a conveyance, as to these public lots; and the title to them could only have been divested by the acceptance of the respective beneficiaries, to be signified by their user. User

amounts to an acceptance.    Some fifteen or twenty years have elapsed since the dedication was made, and the bill alleges, and the proof shows, that no steps have been taken to appropriate a portion of these public lots.   The presumption of law is, that the donations have been declined.   These lots have reverted to the grantor, and not to the city of Griffin; or to be more accurate, the title to these lots has never passed out of the grantor.   And while it is true, that the lien of Still is detached as to the other lots, it attaches upon these.

It is said that the proprietors of real estate in Griffin, purchased at enhanced prices, on account of the dedication of these lots.   It may or may not be so.   There is no evidence that it is so.   No complaint is made by them.   It may be that contiguous proprietors to church lots, at least, would prefer not to have churches near them.   This is true in most towns.   It is a serious objection with many.

But suppose it were otherwise, and that they were before us urging this argument.   It might be truthfully replied, that you bought, knowing that these lots might not be accepted for the purposes for which they were dedicated.   And you knew, or ought to have known, that you could not compel them to do so.

As to the court-house lots, military parade ground and ornamental squares, or any other lots which were set apart for public uses, it is not necessary that they should be enclosed or improved in any particular way.   It is sufficient if they have been used for the purposes for which they were set apart.   And this will be the issue for the jury to try in each particular case.   It is better, we doubt not, both for the city and adjoining lot holders, that these vacant lots should be sold, and improved by somebody.   Were the religious denominations that have failed to act, strong enough to organize congregations and build churches in Griffin, it is very questionable whether they would be willing to accept the particular locations designed for them.

Judgment reversed.