## CARLTON v. SEABOARD AIR-LINE RAILWAY.

1. Where the owner of a body of land, through which a private road is maintained by him as a way necessary for ingress and egress between his residence and his farm and timbered lands located thereon, sells a strip of land through his tract to a railroad company for the purpose of locating a railroad thereon in such way as to intersect with the private road, and executes to the purchaser a formal deed, whereby he conveys the bargained land to the purchaser in fee simple, with a gen-

eral warranty of title, and recites in the deed that the land is con-
veyed "absolutely and without reservation," there is no implied reserva-
tion of a right to continue the use of the road at the point of intersec-
tion with the land so granted; and under authority of the deed, the
grantee, in so far as it might affect the grantor, can close the road.

2. Under circumstances such as are set forth in the preceding note, if the
grantor, after conveying the strip of land to the railroad company, con-
tinued to use the private way, including that part which was intersected
by the strip conveyed to the railroad company, the fact that he had
made such conveyance would not prevent him from acquiring under the
statute a private way by prescription.

(a) If the railroad was constructed and the tracks were made to cross the
private way by means of a trestle, the land of the railroad company at
such point of intersection was "improved land" within the meaning of
the statute, and the period of prescription would be seven years.

(b) If the private way was less than 15 feet in width, and the prescriber
kept it in repair and used it as such continuously for the statutory
period, he would acquire a private way by prescription.

3. Applying the ruling announced in the preceding note, the petition suf-
ficiently set forth a cause of action, and it was error to dismiss it on
general demurrer.

JUNE 18, 1915.

Action for damages.　Before Judge Edwards.　Polk superior
court.　March 4, 1914.

H. M. Carlton instituted an action against the Seaboard Air-
Line Railway, to enjoin the closing of a wagon-road which passed
under the defendant's trestle, and to recover damages. The de-
fendant was engaged in "filling in" the trestle, the work having
been commenced shortly before the suit was filed. On an interloc-
utory hearing the judge refused an ad interim injunction, and the
plaintiff excepted. No supersedeas having been granted, the de-
fendant completed the work. This fact having been duly presented
to this court, the bill of exceptions was dismissed. *Carlton v. Sea-
board Air-Line Ry.*, 139 *Ga.* 692 (77 S. E. 1128). The plaintiff
persisted in that branch of his suit which sought to recover damages.
The petition was twice amended, and the defendant filed demurrers,
on special and general grounds, to the original petition and to the
petition as amended. Without passing on the grounds of special de-
murrer the judge dismissed the case on general demurrer. The writ
of error brings this judgment up for review. The following appears
from the allegations of the petition as amended: Plaintiff owned
a large body of land in Polk county, consisting of designated lots
and fractions of lots. He resided on the property and cultivated
farms thereon. The uncultivated portions of the land contained

valuable timber and wood, all of which, before the injury complained of, were available to him for market and farm purposes. The defendant's line of railway runs east and west through the plaintiff's body of land, dividing it approximately into two equal parts. His residence and the larger part of his cultivated lands are on the north side of the railroad. A considerable part of cultivated land and land on which there is valuable timber· and wood are situated on the south side of the railroad. Concerning the location of the wagon-road involved in this litigation, the petition alleged: "Petitioner further says that the only accessible way there is from the north side of said farm to the land lying on the south side of the railway is the roadway leading from the public road which leads from Rockmart to Dallas, and runs in a southeasterly direction through said farm, by the residence of the petitioner and then on through said farm to trestle number 612.3 on land lot numbers one thousand and twenty-two and one thousand and twenty-three, thence .up the valley between said mountain-ranges, penetrating the entire wood and timber land, and affording petitioner the only outlet from 'one part of his farm to another; and the only way petitioner can transport wood and timber located thereon to the market, and for farm purposes. And this road furnishes the only outlet to that portion of said land which is tillable, as the range on the east and west side of said land is so high that it can not be successfully crossed with a wagon, said range extending south approximately two and one half miles, where it intersects with another range which runs practically east and west, thus making it impossible for petitioner to approach said lands and remove therefrom the wood and timber thereon, or to cultivate the same." An amendment to the petition, in regard to the location of the road referred to above, alleged that it "leads from the Rockmart and Marietta public road across his farm to the Yorkville and Dallas public road, intersecting with the latter road near Braswell." This road was in existence before the location of the railroad was acquired and before the railroad was constructed. The railroad was located upon a strip of land conveyed by the terms of a deed executed by the plaintiff to the Atlanta & Birmingham Air-Line Railway Company, a corporation, in 1903. The consideration expressed in the deed was $1,550. It recited that the grantor "has granted, bargained, and sold, and by these presents does

grant, bargain, sell, and convey unto the said party of the second part, and its successors and assigns, a tract or strip of land." Then follows a description of the strip of land described as running across the several lots forming the body of plaintiff's land, recited as being in width two hundred feet through one lot, two hundred and fifty feet through another, and one hundred and sixty feet through each of the others. The quantity of land covered by the strip was recited as being 20.50 acres. After the description above referred to, the recitals of the deed proceeded: "It is the intention of the said H. M. Carlton to convey to said railway in this conveyance all the right of way over his said lands, including the right of way above described in the third paragraph of this deed; all of which lands, including the 200-feet strip on each side, is conveyed absolutely and without reservation, and running through said lands ———— feet wide, as above described, to where said survey or 'line leaves or shall leave the said lands. To have and to hold the said tract or strip of land, with all and singular the rights, members, and appurtenances thereunto appertaining, unto the said party of the second part, its successors and assigns, in fee simple; and the said H. M. Carlton, the said bargained lot or tract of land unto the said party of the second part, its successors and assigns, against the said H. M. Carlton and against his heirs, administrators, and executors, and against all and every other person or persons, shall and will warrant and forever defend by virtue of these presents. And for the same consideration does further grant, bargain, sell, and convey to the said party of the second part, its successors and assigns, the following additional rights and privileges, upon the foregoing described lands." Then follow recitals conferring a right to cut trees on an additional described strip through the plaintiff's lands adjacent to the strip mentioned above, where necessary to prevent the trees from falling on the railroad track; also the right to change the course of streams "on or off the right of way herein conveyed," by cutting canals, ditches, or otherwise; also, "the right to quarry and use such stone or gravel on said right of way as may be required in the construction of said railway, and also the right to construct and use such wagon-roads through said lands as will facilitate the construction of the railroad of said party of the second part;" also, "the right to take material where necessary outside of the right of way for the purpose of mak-

ing embankments, and also the right to deposit material excavated from cuts, canals, or ditches, on portions of said lands within a limit of two hundred (200) additional feet on either side of said right of way." The wagon-road through plaintiff's farm had been located along its present road-bed for a period of twenty-five years or more, and the plaintiff and his tenants have worked and kept it in repair for the past twenty-one years. It is not over fifteen feet in width, and has been worked and used both as a way of convenience and necessity for the purpose of using and enjoying plaintiff's land south of the railroad. When the railroad company went to construct the trestle over the road it had notice of the existence of the road, and recognized it as an easement, and so arranged the timbers of the trestle as not to interfere with the use of the road; and afterwards permitted its continuous use, recognizing it as a private way of necessity for more than seven years immediately preceding the attempt to obstruct it. The defendant failed to give thirty days notice of its intention to close the way, but closed it quickly with the view of completing the obstruction before any action of law could be taken to prevent it. The special damage sought to be recovered was alleged to be stated amounts in which the market value of the plaintiff's wood and tillable land had been diminished on account of the closing of the road.

*I. F. Mundy* and *W. W. Mundy,* for plaintiff.

*W. G. Loving* and *E. S. Aull,* for defendant.

ATKINSON, J.   1.   In order to recover damages from the railroad company for obstructing the private way, it was essential that the plaintiff should be entitled to maintain a road at the place where the defendant obstructed it.   As to this feature of the case, the plaintiff projected his suit, first, upon the theory that he had title, and, though he had executed a deed conveying the land on which the railroad was constructed, that the deed did not operate to deprive him of the use of the existing private way which was intersected by the strip of land so granted; and, second, upon the theory that if the deed had such effect, nevertheless, after the deed was executed and the railroad constructed, he continued to use the roadway under such circumstances and for such length of time as to afford him a private way by prescription.   Whether the plaintiff could recover upon the first theory depends upon the effect of the deed.   It was executed upon a valuable consideration, and pur-

ported to convey the strip of land therein specifically described, in fee simple, with a clause of general warranty of title. This was not all. It was also declared that all of the land "is conveyed absolutely and without reservation." Under these circumstances the deed, in effect, was an absolute conveyance of the grantor's interest in the strip of land described, without any reservation whatever, thereby vesting any title to the property which he had or might subsequently acquire in his grantee. In 3 Elliott on Railroads, § 1138, it is stated, relatively to a deed by a landowner to a railroad company, conveying a right of way, which is silent as to private crossings between the different parts of his land, that the rule is "that such a conveyance does not constitute a waiver of a right to a private crossing, and the owner whose land has been severed into parcels may claim and enforce the right to a crossing, notwithstanding his unconditional instrument of conveyance." See also Brigham v. Smith, 4 Gray, 297 (64 Am. D. 77), and annotations in 9 Notes to Am. Dec. 353. See also cases cited in 17 Am. Dig. (Cent. ed.) 807, § 59. The rule so stated rests upon the theory of an implied reservation. It does not seem that this rule has been adopted in Georgia. Charleston & Western Carolina Railway Co. v. Fleming, 118 Ga. 699 (45 S. E. 664). None of these authorities, however, go to the extent of holding that there would be an implied reservation where the land on which the railroad was to be located was conveyed in fee and the deed expressly declared, as in the case now under consideration, that there should be no reservation. There could be no such implication in the face of an express recital that there should be no reservation. The land conveyed by the deed was so situated as to intersect the existing road; and by the terms of the deed the plaintiff put it out of his power, by virtue of his ownership theretofore existing, to maintain the road over the section of land which he granted to the railroad company, and put it in the power of the railroad company, in so far as it might affect the plaintiff, to close the road. Charleston & Western Railway Co. v. Fleming, 119 Ga. 995 (47 S. E. 541).

2. The right of private way over another's land may arise by prescription from seven years uninterrupted use through improved lands, or twenty years use over wild lands. Civil Code, §§ 3641, 818, 824. A prescription of this character may arise notwithstanding the prescriber may know that the land over which he under-

takes to prescribe is the property of another. The way must not exceed 15 feet in width, and its use as a way must have been continuous for the statutory period, and the prescriber must have kept the road in repair. *Kirkland* v. *Pilman*, 122 *Ga.* 256 (50 S. E. 117). In the case at bar, notwithstanding the plaintiff, by virtue of his deed, had transferred his title in the property conveyed to his grantee, nevertheless, according to the allegations of the petition, he continued to use the private road across the land so granted. The land was improved by the construction of the railroad thereon and the trestle over that part of it which intersected with the plaintiff's private roadway. Accordingly, seven years was the prescriptive period applicable in such a case. The road was less than fifteen feet in width, and the same road-bed had been continuously used and kept in repair by the plaintiff for a length of time which exceeded the prescriptive period. Under such circumstances, he would acquire a right of private way by prescription. See also 3 Elliott on Railroads, § 1140.

3. Applying the ruling announced in the preceding division to the allegations of the petition, it set forth a cause of action sufficient as against general demurrer, and it was 'error to dismiss the petition.        *Judgment reversed.   All the Justices concur.*