30018.   STEWART COUNTY *v.* HOLLOWAY.

Decided April 13, 1943.

*R. S. Wimberly,* for plaintiff. *T. Grady Head, attorney-general, J. M. C. Townsend,* for defendant.

SUTTON, J. Stewart County brought an action of trover against Paul Holloway to recover certain bridge steel alleged to be its property. The defendant admitted refusal to deliver the property on demand, setting up that he did not claim the property in his own right but that he was holding it as custodian for the State Highway Department and denied that the plaintiff had any title thereto. The case was submitted to the trial judge, without the intervention of a jury, on the following agreed statement of facts: "In October, 1915, Stewart County caused to be erected a bridge of steel construction spanning the main stream of Pataula Creek on what is now State Route number 1, between Cuthbert and Lumpkin, Georgia, and also a shorter bridge of the same construction across another arm or branch of the creek just south of the main stream, these bridges being built by contract at a cost to the county of $3438. Under the act of 1919, pages 242 to 253, which acts are made a part of this agreed statement of facts, the State Highway Department of Georgia assumed jurisdiction of that part of State Route Number 1 on which were located the bridges above referred to, and has since that time, up to September 5, 1941, continuously maintained such road and bridges as provided by law. Stewart County never procured any deeds to the land on which were located the bridges spanning Pataula Creek, and no deeds were given by Stewart County to the State Highway Department covering the property on which said bridges were located; but Stewart County operated and maintained this road on which said bridges were located as a public road for more than twenty years before said bridges were built, and the said State Highway Department Board has since 1919 maintained the same as a part of the State system of roads. On October 8, 1935, the State Highway Department of Georgia procured a deed from Mrs. Florence Oliver Crumbley to certain land as a right of way, and a copy of said deed is hereto attached as part of this agreed statement of facts. The property covered by said deed included 66 per cent. of the property on which the main bridge above referred to was erected, as shown by plat hereto attached and made a part hereof, but did not include any of

the land on which the smaller bridge was erected. On or about the 11th day of September, 1941, the State Highway completed the erection of 'a new bridge spanning the Pataula Creek on Route Number 1 in Stewart County on the above-mentioned right of way received from Mrs. Crumbley. On the 5th day of September, 1941, the State Highway Department of Georgia dismantled the two bridges above described, and the steel from said bridges is now in the possession of the defendant, Paul Holloway, and the said Paul Holloway is holding such steel for the State Highway Department in his capacity as patrolman, and is not holding the same individually and does not claim title thereto. About fifty per cent. of the total quantity of said steel before said bridges were dismantled was on land covered by the Crumbley right of way above referred to, and about fifty per cent. was off this right of way and on land not covered by it. The market value of the whole of said steel is $2750." The deed referred to as attached to this statement of facts was a deed from Mrs. Crumbley to the State Highway Department of the "right of way" for a road through her land to the width of 100 feet for part of the distance and 200 feet for part of it, and the attached plat showed the location of the bridges as stated in the agreed statement of facts, according to a recital in the bill of exceptions, but does not appear in the record.

The judge in a written opinion held that, "When the Highway Department designated the highway in question as a State-aid road it became invested with all the rights that Stewart County then and there had in and to said road. By expressly providing for reimbursement to the respective counties for the expense of roads constructed in a certain way, the conclusion is inescapable that it was not the legislative intent that the Highway Department should incur any other obligation to the counties in designating State-aid roads," and that the plaintiff is not entitled to maintain and recover the steel described in the trover action. The exception is to that judgment.

The situation with respect to the bridges here involved and the land on which they were located, at the time the State Highway Department took over the road as part of the State-aid road system in 1919 was as follows: Stewart County had operated and maintained the highway for several years but had never procured any deed to the land. In 1915 it had erected the bridges at its own

expense. Nothing else being shown, it had acquired as to the road, at most, only an easement. The fee remained in the person who owned the land at the time the county constructed the road. "Ownership of the soil and the right to an easement are independent. The grantee of an easement is not the owner or occupant of the estate over which the right extends, but the right to the fee and the right to an easement in the same realty are independent of each other, and may well coexist even when vested in different persons." *Donalson* v. *Georgia Power & Light Co.,* 175 *Ga.* 462 (165 S. E. 440). "Nothing passes as an incident to the grant of an easement but what is requisite to its fair enjoyment." *Georgia Power Co.* v. *Leonard,* 187 *Ga.* 608 (2) (1 S. E. 2d, 579). The bridges were obviously not erected to improve the land but for the purpose of enabling traffic to continue on the road across Pataula Creek. Were they, as contended by the plaintiff, trade fixtures and as such removable, or did they, when erected, become part of the realty, or did they become the property of the State Highway Department, as contended by the defendant, when it assumed jurisdiction of the road under the provisions of the act of 1919 (Ga. L. 1919, p. 242; Code, §§ 95-1701 et seq.)?

"Any thing intended to remain permanently in its place, though not actually attached to the land, such as a rail fence, is a part of the realty and passes with it. Machinery, not actually attached, but movable at pleasure, is not a part of the realty. Anything detached from the realty becomes personalty instantly on being so detached." Code § 85-105. The general rule at common law was that articles attached to the realty became a part thereof, but there was an exception to this rule in the case of *trade fixtures.* *Charleston &c. Ry. Co.* v. *Hughes,* 105 *Ga.* 1, 23 (4) (30 S. E. 972, 70 Am. St. R. 17); *Wright* v. *DuBignon,* 114 *Ga.* 765 (40 S. E. 747, 57 L. R. A. 669). As stated in *Holland Furnace Co.* v. *Lowe,* 172 *Ga.* 815 (2) (159 S. E. 277): "When the ownership of land is in one person and of a thing affixed to it is in another, and the fixture is in its nature capable of severance without injury to the former, the fixture can not, in contemplation of law, become a part of the land, but necessarily remains distinct property to be used and dealt with as personal estate." In the *Hughes* case, supra, railroad tracks were involved, and Justice Cobb, speaking for the court, referred with evident approval to several cases in outside jurisdictions

in which the following were treated as trade fixtures: Buildings used as military barracks and hospitals during the civil war and placed on the common of York, Pennsylvania, for military purposes; stone piers built by a railroad company as a part of its railroad on lands over which it had acquired a right of way; railway tracks; "structures placed upon the property for use by the company in its business." In *Mayor &c. of Gainesville* v. *Dunlap*, 147 *Ga.* 344 (4) (94 S. E. 247), it was held: "Where in order to reach the reservoir the city laid a water-main through the lands of others under a lease or parol license which was silent as to the right of removal of the pipe or pipes, the laying of the pipes not being for the improvement of the realty but for the use of the city in the operation of its waterworks, the pipes are in the nature of trade fixtures and removable at any time by the city without the consent of the landowners." In *Carr* v. *Georgia Railroad*, 74 *Ga.* 73 (2), it was ruled: "The authorities are to the effect that a depot building, erected by a railroad, not for the purpose of improving the inheritance, but to aid and assist the company in carrying on its business, is a trade fixture, and a tenant may remove such fixtures before the expiration of his term."

It is clear that the removal of the bridges here involved would not impair the value of the land, and especially since they were constructed for the purpose of furthering traffic over Pataula Creek they were, under the above authorities, in the nature of trade fixtures, the title to which was in Stewart County. The State Highway Department, beginning in 1919 and to September 5, 1941, operated and maintained the road and bridges as part of the State-aid road system. It never acquired the fee to the land or to the bridges, though it appears to have obtained from one Mrs. Florence Crumbley, on October 8, 1935, a deed to certain land as a right of way, the property including 66 per cent. of the land on which the main bridge over Pataula Creek was erected, though no part of the land on which the smaller bridge was placed. By such conveyance from Mrs. Crumbley no fee to the land or to the bridges was obtained. Only an easement was acquired. On November 5, 1941, the State Highway Department dismantled the two bridges, having on or about September 11, 1941, completed the erection of a new bridge over Pataula Creek on the right of way acquired by deed from Mrs. Crumbley. The steel from the bridges constructed by

Stewart County was removed, and at the time of the trover action here instituted was, as admitted in the defendant's answer, stored on a lot in the City of Lumpkin, Georgia, and in the possession of the defendant. When the bridges were dismantled the easement therein was abandoned by the State Highway Department. Abandonment is conclusively shown by the fact that the steel was moved elsewhere and stored. "An easement may be lost by abandonment, or forfeited by nonuser, if the abandonment or nonuser shall continue for a term sufficient to raise the presumption of release or abandonment." Code, § 85-1403; *Calfee* v. *Jones,* 54 *Ga. App.* 481 (4), 483 (188 S. E. 307); *Moxley* v. *Adams,* 190 *Ga.* 164 (2) (8 S. E. 2d, 525). The title to the personalty, the steel which was taken from the bridge structures, and of the admitted value of $2750, being in Stewart County, the present trover action was properly maintainable by Stewart County against the defendant who held the property without title or right of possession. The evidence demanded a finding in favor of the plaintiff, and the trial judge erred in directing a verdict for the defendant.

But it is contended by the defendant that the title to the bridges was not in Stewart County but in the State Highway Department, for the following reasons: The Code, § 95-1701, provides: "There is hereby created a system of State-aid roads for the purpose of interconnecting the several county seats, which shall be designated, constructed, improved, and maintained by the State through the State Highway Department, under the provisions of law; and the term 'State-aid roads' shall include the State or interstate bridges and other subsidiary structures necessary or desirable in the construction of said roads." Code § 95-1708 provides: "Efforts shall be made to serve as large a territory and as many market points as practicable with the said system, due consideration being given topographic and construction difficulties. The State Highway Department shall have the right to resurvey and relocate in their entirety any or all of said roads, keeping in view only the control points. In relocating any road or right of way the State Highway Department shall confer with the ordinary or county commissioners, as the case may be, and give due consideration to their wishes, but in case of disagreement the judgment of the State Highway Board shall prevail." The Code, § 95-1709, provides: "When any portion of the designated State-aid road system is taken under the

jurisdiction of the State Highway Department, no county in which said portion is located shall thereafter be required to levy taxes for the construction or maintenance of said portion, nor to use any of its funds or road forces in the construction or maintenance thereof." Code § 95-1721 provides: "When a road is approved as a part of the system of State Highways, the establishment of such road and its construction, including location, surveys, grading, and paving, shall be under the control and supervision of the State Highway Board. All expenses necessary for such construction, including surveys, the location or relocation of such roads, and all other expenses connected with the establishment and construction thereof, except the expense of procuring rights of way, shall be paid by the Board out of funds allocated to the Highway Department. It shall be the duty of county commissioners or other county authorities having control of county roads to assist in procuring the necessary rights of way as cheaply as possible, and all expenses thereof, including the purchase price of any land purchased for a right of way, and all direct and consequential damages awarded in any proceeding brought to condemn any such right of way, shall be paid by the county in which such road is situated out of the county treasury: Provided, that nothing contained in this section shall prevent the State Highway Board from using State highway funds for the purpose of purchasing rights of way, or to pay the purchase price thereof, or to pay any damages awarded on account of the location of any such State-aid road, or from assisting the counties in so doing."

By the act of 1931 (Ga. L. 1931, pp. 97, 99) an amendment to the constitution was proposed whereby the State would assume certain indebtedness of the counties of the State incurred in the construction or paving of certain public roads or highways. This amendment as proposed was ratified by the people in 1932; and on March 1, 1933, was approved the enabling act passed pursuant thereto. Ga. L. 1933, pp. 161-172. The constitutional provision as amended appears in the Code, § 2-5601, in which it is provided in part, "that all indebtedness of the several counties of this State . . heretofore incurred for the construction and/or paving of the public roads or highways (including bridges) of the State, as contemplated and defined by article six, section 1, of the act approved August 18, 1919, as said section appears on page 252 of the Georgia

laws of 1919, which were a part of the State-aid roads of the highway system of Georgia, and said work was done under the supervision of the Highway Department, is hereby assumed by the State of Georgia as an indebtedness of the State." The amendment also provided for the issuance of certificates of indebtedness by the State Highway Department, and the enabling act of 1933, supra, which is codified in sections 95-2101 et seq., declared the various amounts due the respective counties, the amount due Stewart County being shown as $47,475, the sums declared to be due being for "assessments made against said counties . . for the construction and/or paving of the public roads and highways (including bridges) of the State, which were a part of the State-aid roads of the highway system of Georgia, *which said construction and/or paving was done, or contract or agreement made for same to be done, under the supervision of the State Highway Department prior to September 1, 1931."* (Italics ours.)

It is urged that by reason of these provisions the State Highway Department acquired title to the bridges constructed by Stewart County by assuming the expense of maintaining them and the highway which they served, the county being relieved of that duty and provision having been made by the amendment to the constitution (Code § 2-5601) and the enabling act (Code § 95-2101) for reimbursing the county for expense it had sustained in maintaining the bridges and the road they served. It is further contended by the defendant that if the county was not satisfied with the amount paid it as reimbursement of expense incurred with respect to any road which became a part of the State-aid system, a suit should have been brought against the Highway Department within ninety days from March 1, 1933, as provided by Code § 95-2109, and that the county is now barred from complaining, and title to the steel from the bridges is vested in the State Highway Department.

In the enabling act of 1933 (Ga. L. 1933, pp. 161-172), codified as Code §§ 95-2101 et seq., and in the amendment to the constitution the provision for reimbursing the various counties of the State was only as to "assessments made against said counties . . for the construction and/or paving of the public roads and highways (including bridges) of the State, which were a part of the State-aid roads of the highway system of Georgia, *which said construction and/or paving was done, or contract or agreement made for same*

*to be done, under the supervision of the State Highway Department prior to September 1, 1931."* (Italics ours.) The road on which were erected the bridges in question was being operated and maintained by Stewart County at the time the legislature enacted the act of 1919 providing for a State-aid road system. The bridges had been constructed in 1915 at the county's expense. None of the work was done at the instance of the State Highway Department or under its supervision. The work was not on a road which was a part of the "State-aid roads." Consequently, the provisions of the amendment to the constitution and the enabling act of 1933, supra, have no application here. The sum declared due the county, $47,475, in the enabling act was for expense incurred by Stewart County other than that sustained by it in maintaining the road over Pataula Creek as a county road before it became a part of the State-aid road system.

In *State Highway Department* v. *Richmond County,* 179 *Ga.* 642 (177 S. E. 504), the State Highway Department discontinued a road between Waynesboro and Augusta and constructed a new one between the two cities. Thereafter Richmond County, at its own expense, paved a portion of the old road and by suit sought to obtain reimbursement from the State Highway Department for the expense incurred. The Supreme Court ruled that, "Under the constitutional amendment submitted in 1931 (Acts 1931, p. 97), ratified in 1932, and the enabling act passed in pursuance thereof (Acts 1933, p. 161),, it is only for work done on a State-aid road that a county may be reimbursed." In that case the paving was done on a road at a time when it was not a part of the State-aid road system. While the work there done was on a road after it ceased to be a part of the State-aid road system, and the expense incurred in the present case was in connection with a road which had not then become a part of the State-aid road system, the principle of law ruled in the *Richmond County* case, supra, is no less applicable here.

It follows from what is said above that the trial judge erred in rendering judgment for the defendant.

*Judgment reversed. Stephens, P. J., and Felton, J., concur.*