A98A0926. CENTRAL OF GEORGIA RAILROAD COMPANY
v. DEC ASSOCIATES, INC.
A98A0927. DEC ASSOCIATES, INC. v. NORFOLK SOUTHERN
CORPORATION.
(501 SE2d 6)

ELDRIDGE, Judge.

Central of Georgia Railroad Company ("Central"), defendant-appellee, was substituted by consent of the parties and by order of the trial court as the proper party for Norfolk Southern Corporation ("Norfolk"). On January 12, 1996, DEC Associates, Inc. ("DEC"), plaintiff-appellant, commenced an action in the Superior Court of Clarke County to enforce a 1971 alleged easement agreement and to enjoin Central from denying DEC access to the subject property.

On December 31, 1970, Lane Oil Company, Inc. ("Lane") entered into a land purchase agreement with Evans & Mitchell Industries, Inc. ("EMI") for the subject property, contingent upon an easement for an access road over Central's railroad tracks to access the property.

After extensive negotiations between Lane, Central, and Clarke County, an agreement was reached and executed on May 21, 1971. The agreement lacked an official witness and was not recorded as an easement in the deed records of the Clerk of the Superior Court of Clarke County. The agreement was in the form of a unilateral contract in which Lane promised to pay the costs of construction of the road and grade crossing if Central and Clarke County built the road and grade crossing; however, neither Central nor Clarke County promised to perform the work and only expressed the intent to do so without binding themselves to do so. Central was to construct the grade crossing over its tracks; upon completion, Lane was to repay

Central the costs upon submission of the bill. The County was to construct a road up to and across the tracks at the expense of Lane. If the road and grade crossing was constructed and Lane paid for it, then Clarke County made certain promises to Central, which never occurred. Central agreed that it "hereby grants unto the County the right to construct and maintain upon and across, at grade, the right of way and main track of Railroad, the aforesaid grade crossing."

After entering into the agreement and without performing the agreement, Lane sold the property to EMI. In 1975, prior to developing the property or construction of the crossing and road, EMI filed a Chapter 7 bankruptcy petition so that it could not pay for the construction, if performed. On June 12, 1975, the trustee in bankruptcy for EMI sold the property through quitclaim deed to Citizens & Southern Realty Investors ("C&S"). There was no evidence of assignment by the trustee of any other rights, interests, or unrecorded easements to C&S, which would cover the agreement. In May 1983, C&S's successors in interest sold the property to DEC by limited warranty deed.

Neither Lane, EMI, nor any successor in interest constructed the grade crossing or paid for Central or Clarke County to construct the grade crossing. The agreement has not been performed by any party, Central, Clarke County, Lane, or their privies or assigns, for a period of 24 years. Until 1995, no one made a demand upon either Central or Clarke County to perform the agreement.

Central denied that the agreement created an easement and stated that DEC could not enforce the agreement.

After suit, both Central and DEC filed cross-motions for summary judgment, and oral argument was heard on January 2, 1997. DEC had the hearing taken down by the official court reporter. On April 1, 1997, the trial court granted Central's motion for summary judgment. On May 1, 1997, DEC filed its notice of appeal.

In the notice of appeal, DEC stated that it would file a transcript of the hearing as part of the record. As of September 25, 1997, DEC had not ordered the transcript from the court reporter. The Clerk of the Superior Court delayed transmitting the record to the Court of Appeals because the transcript had not been filed. On September 25, 1997, Central filed a motion to dismiss the appeal for unreasonable delay in perfecting the appeal by not ordering and filing the transcript. On November 3, 1997, the trial court heard oral argument on the motion and denied the motion to dismiss the appeal of DEC from which Central appealed.

## Case No. A98A0926

Central's enumeration of error is that the lower court abused its discretion in denying Central's motion to dismiss DEC's appeal as

stale. We do not agree.

Under OCGA § 5-6-48 (c), the trial court has the discretion to dismiss an appeal only when the trial court finds (1) unreasonable delay in filing of the transcript of the hearing for summary judgment, (2) such delay was inexcusable, and (3) caused by the appellant. *Dept. of Human Resources v. Patillo*, 196 Ga. App. 778 (397 SE2d 47) (1990). This case does not satisfy all of such elements necessary for the exercise of the discretion of the trial judge.

The question of unreasonable delay is a matter for the sound discretion of the trial court. *ITT Indus. Credit Co. v. Burnham*, 152 Ga. App. 641 (263 SE2d 482) (1979); *Johnson v. Clements*, 135 Ga. App. 495 (218 SE2d 109) (1975). In the exercise of its discretion, the trial court must determine if the delay was unreasonable by examining both the length of time involved and the effect of the delay. See *Cook v. McNamee*, 223 Ga. App. 460 (477 SE2d 884) (1996). Here, Central was in no way prejudiced, and the appeal is not, in fact, stale.

The trial court must also determine if the delay was excusable. *Jackson v. Beech Aircraft Corp.*, 213 Ga. App. 172 (444 SE2d 359) (1994). The trial court found that DEC mistakenly stated in the notice of appeal that it would include a transcript.

The trial court's finding will not be reversed except upon a finding of abuse of discretion. *Patterson v. Professional Resources*, 242 Ga. 459 (249 SE2d 248) (1978); *Teston v. Mills*, 203 Ga. App. 20 (416 SE2d 133) (1992). The trial court did not abuse its discretion in denying the motion to dismiss the appeal. *Baker v. Southern R. Co.*, 260 Ga. 115 (390 SE2d 576) (1990); *Corbin v. First Nat. Bank &c.*, 151 Ga. App. 33 (258 SE2d 697) (1979); *Strother v. C & S Nat. Bank*, 147 Ga. App. 140 (248 SE2d 204) (1978).

### Case No. A98A0927

1. DEC's first enumeration of error is that the trial court erred in not finding the 1971 agreement a valid grant of an easement across Central's railroad tracks. We do not agree.

(a) First, it must be determined, arguendo, that if an easement had been granted, would it remain valid after 25 years without any use. OCGA § 44-9-6 reads: "An easement may be lost by abandonment or forfeited by nonuse if the abandonment or nonuse continues for a term sufficient to raise the presumption of release or abandonment." See *Kirkland v. Pitman*, 122 Ga. 256 (50 SE 117) (1904).

If an easement was created by the agreement in this case, then it was abandoned by nonuse, because until 1995 neither Lane, EMI, C&S, nor DEC requested construction of the grade crossing or exercised any right to cross Central's tracks. This is compelling evidence of abandonment; there was no evidence of use at any time.

*McElwaney v. MacDiarmid*, 131 Ga. 97, 98 (2) (62 SE 20) (1908); *Stewart County v. Holloway*, 69 Ga. App. 344, 347 (25 SE2d 315) (1943); *Seaboard Air-Line R. v. Sikes*, 4 Ga. App. 7, 10 (60 SE 868) (1908). Certainly, there has never been use or exercise of any rights of use of the easement.

Any grant of a right to construct a grade crossing was given to Clarke County under the agreement and was not granted to the property owner. To create a public easement by grant, there must be an express offer to dedicate the land to a public easement; there must be an acceptance of the dedication by the public authorities; and there must be use, maintenance, or repair demonstrating an acceptance of the easement for public use. *Jackson v. Chatham County*, 225 Ga. 641, 643-644 (1) (170 SE2d 418) (1969). If the governmental authority never assumed control of the easement, then acceptance of the easement cannot be inferred. *Hames v. City of Marietta*, 212 Ga. 331 (4) (92 SE2d 534) (1956). A governmental authority can abandon an easement through nonuse. However, if there is a conflict in the evidence, such abandonment is a mixed question of law and fact. It is for the trial court to decide where, as in this case, there exists no factual dispute. *Jackson v. Chatham County*, supra at 644; *Hames v. City of Marietta*, supra at 332; see generally *Stewart County v. Holloway*, supra at 349; *Seaboard Air-Line R. v. Sikes*, supra at 10. If an easement right was given over certain land to construct a street or road, which was never constructed, then a forfeiture or abandonment by the governing authority will occur by nonuse when a term sufficient to raise a presumption of release or abandonment has passed. *Mayor &c. of Savannah v. Bartow Investment Co.*, 137 Ga. 198, 204 (72 SE 1095) (1911). Where 15 to 20 years have elapsed since the dedication of the easement without the government exercising any control, the presumption of law arises that the donation of the easement was declined by the governmental entity. *Still v. Mayor &c. of Griffin*, 27 Ga. 502, 506 (1859); *Hames v. City of Marietta*, supra at 332.

If a prescriptive use adverse to the owner can ripen into a permanent easement after 20 years of use, then conversely 20 years of continuous nonuse of an easement and use by the owner adverse to any rights of the easement holder would give rise to a strong presumption of abandonment of the easement. *Gilbert v. Reynolds*, 233 Ga. 488, 493 (212 SE2d 332) (1975); *Mathis v. Holcomb*, 215 Ga. 488, 489 (1) (111 SE2d 50) (1959); *Kelsoe v. Town of Oglethorpe*, 120 Ga. 951, 956 (3) (48 SE 366) (1904); see generally OCGA § 44-9-1; *Carlton v. Seaboard Air-Line R.*, 143 Ga. 516 (85 SE 863) (1915); *Puryear v. Clements*, 53 Ga. 232, 235 (1874).

(b) The agreement did not constitute a grant of an easement within OCGA § 44-9-1. "An express grant of an easement must con-

tain language sufficient to designate with reasonable certainty the land over which it extends. It is generally sufficient to identify the whole tract of land owned by the grantor over which the easement passes." (Citation and punctuation omitted.) *Macon-Bibb County Indus. Auth. v. Central of Ga. R. Co.*, 266 Ga. 281, 283 (466 SE2d 855) (1996). First, the agreement was neither a deed nor in a form that could be recorded with the Clerk of the Superior Court on the deed records; second, it did not use language of the grant of an easement; third, it was conditional on the occurrence of certain acts that never occurred, either within a reasonable time or at any time; fourth, it had no legal description to identify the property or easement; and fifth, there was never the exercise of any use of right of ingress or egress across the tracks of Central. See id.; *Jones v. Mauldin*, 208 Ga. 14, 15 (64 SE2d 452) (1951); *Rogers v. Pitchford*, 181 Ga. 845 (184 SE 623) (1936).

EMI went bankrupt in 1975; its bankruptcy terminated the offer to pay if the others performed by constructing the grade crossing. If there existed any executory contract granting a license, then the agreement had not been performed at the time of bankruptcy by any party or privy, so that the agreement could not change from a license to an easement by paying for the improvement of the easement. Therefore, no easement arose for the trustee in bankruptcy to convey by quitclaim deed or to run with the land. *Mathis v. Holcomb*, supra at 488-489. Therefore, C&S received no rights under the agreement, which license ceased as a result of the bankruptcy, causing the offer in the agreement to pay for the improvements to terminate. Id. at 488.

2. Division 1 has rendered enumerations of error 2 and 3 unnecessary for determination.

*Judgments affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED MARCH 31, 1998.

*Weissman, Nowack, Curry & Zaleon, William C. Thompson, Charles B. Waters, Jr.*, for Central of Georgia Railway Company and Norfolk Southern Corporation.

*Scott, Quarterman & Wells, Russell T. Quarterman*, for DEC Associates, Inc.